1  CHRISTOPHER MCKALPAIN, IN PRO PER
   6938 LAUREL CANYON BOULEVARD, UNIT # 302
2  NORTH HOLLYWOOD, CA 91605
   PHONE: (818) 255-3967
3
   CHRISTOPHER MCKALPAIN, IN PRO PER
4

FILED
CLERK U.S. DISTRICT COURT
MAR 1 8 2010
CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

5              UNITED STATES DISTRICT COURT

6              CENTRAL DISTRICT OF CALIFORNIA

7                                    Case No. **CV10  1985**-G AF (A6Rx)

8  CHRISTOPHER MCKALPAIN, an

   individual,                       )  **COMPLAINT FOR:**
9                                    )  1. **VIOLATION OF TRUTH IN**
           Plaintiff,                )     **LENDING STATUTE,**
10                                   )     *15 U.S.C. § 1611*
       vs.                           )  2. **VIOLATION OF REAL ESTATE**
11                                   )     **SETTLEMENT PROCEDURES**
   DEUTSCHE BANK AG, a Foreign       )     **ACT (RESPA),** *26 U.S.C. §2605*
12                                   )     **REQUIRING RESCISSION**
   Corporation, F/K/A/ DB HOME LENDING, )  3. **VIOLATION OF THE HOME**
13                                   )     **OWNERSHIP AND EQUITY**
   LLC, HSBC BANK USA, N.A., a National )     **PROTECTION ACT (HOEPA),**
14                                   )     *15 U.S.C. §1602*
   Association, OCWEN LOAN SERVICING, )  4. **VIOLATION OF THE FAIR DEBT**
15                                   )     **COLLECTION PRACTICES ACT**
   LLC, a Delaware Limited Liability Company, ) **(FDCPA),** *15 U.S.C. §1692*
16                                   )  5. **BREACH OF FIDUCIARY DUTY**
   AZTEC FORECLOSURE CORPORATION, a )  6. **BREACH OF ORAL AGREEMENT**
17                                   )  7. **BREACH OF COVENANT OF**
   California Corporation, and DOES 1-10, )     **GOOD FAITH AND FAIR**
18                                   )     **DEALING**
   inclusive,                        )  8. **VIOLATION OF CALIFORNIA**
19                                   )     **CIVIL CODE §51.5**
           Defendants.               )  9. **VIOLATION OF** *42 U.S.C.§ 1981*
20                                   )  10. **VIOLATION OF** *42 U.S.C.§ 1983*
                                     )  11. **VIOLATION OF** *42 U.S.C. §2000d*
21                                   )  12. **FAILURE TO MODIFY LOAN-**
                                     )     **CALIFORNIA CIVIL CODE**
22                                   )     **SECTIONS: 2923.5 ET SEQ. AND**
                                     )     **2923.6**
23                                   )  13. **WRONGFUL FORECLOSURE -**
                                     )     **CALIFORNIA CIVIL CODE**
24                                   )     **SECTIONS: 2924 ET SEQ., TILA,**
                                     )     **HOEPA, RESPA, REGULATION Z**
25                                   )  14. **QUIET TITLE**
                                        15. **DECLARATORY RELIEF**

                                1

PLAINTIFF'S COMPLAINT FOR DAMAGES, AND RESCISSION

```
3/18/2010 4:15:29 PM  Receipt #: 134197
           Cashier : KPAGE [LA 1-1]
Paid by: CHRISTOPHER MCKALPAIN

2010-322360   8 - Certify Fees/Rebate(1)
Amount :                            $5.00

2010-510900    Judicial Services ($4)(1)
Amount :                            $4.00
2:CV10-01985
2010-036900     5 - Civil Filing Fee(1)
Amount :                           $50.00
2:CV10-01985
```

**COMES NOW** Plaintiff, CHRISTOPHER MCKALPAIN, and herein complain and alleges as follows:

## JURISDICTION

1.      Jurisdiction within this court is predicated upon various Federal questions arising under the United States Code including but not limited to *15 USCA §1640et* seq., commonly known as the Truth in Lending Act (TILA); *12 USCA §2605,* the Real Estate Settlement Procedures Act (RESPA); and *15 USCA §1602* et seq., commonly known as the Homeowners Equity Protection Act; as well as *15 USCA §1692*, commonly known as the Fair Debt Collection Practices Act.

2.      Plaintiff further pleads jurisdiction pursuant to the doctrine of *pendent* jurisdiction as to various related State law causes of action.

## VENUE

3.      Plaintiff pleads venue within this district. The property exists within said district, and as the Defendants, and each of them, has or is doing business within the district, and further, as the *pendente* causes of action pursuant to California law concerns real property within the County of Los Angeles.

## PARTIES

4.      Plaintiff CHRISTOPHER MCKALPAIN is an individual and at all times relevant hereto was a resident in the city of North Hollywood, County of Los Angeles, state of California.

5.      Defendant DEUTSCHE BANK AG, a Foreign Corporation, F/K/A/ DB HOME LENDING, LLC, was a Foreign Corporation, organized and existing under the laws of the Germany.  It was in the business, at relevant hereto, doing business as a financial institution providing mortgages on real property.  Plaintiff is unaware of the current status of Defendant

2

PLAINTIFF'S COMPLAINT FOR DAMAGES, AND RESCISSION

DEUTSCHE BANK AG, a Foreign Corporation, F/K/A/ DB HOME LENDING, LLC, [hereinafter referred to as "DEUTSCHE"].

6.   Defendant HSBC BANK USA, N.A., was a National Association, organized and existing under the laws of the United States of America.  It was in the business, at relevant hereto, doing business as a financial institution providing mortgages on real property.  Plaintiff is unaware of the current status of Defendant HSBC BANK USA, N.A., [hereinafter referred to as "HSBC"].  HSBC received an assignment of the Deed of Trust from Defendant DEUTSCHE. Please see attached as **Exhibit "A".**

7.   Defendant OCWEN LOAN SERVICING, LLC, was a Delaware Limited Liability Company, organized and existing under the laws of the United States of America.  It was in the business, at relevant hereto, doing business as a financial institution providing mortgages on real property.  Plaintiff is unaware of the current status of Defendant OCWEN LOAN SERVICING, LLC, [hereinafter referred to as "OCWEN"].

8.   Defendant AZTEC FORECLOSURE CORPORATION, was a California Corporation, organized and existing under the laws of the United States of America.  It was in the business, at relevant hereto, doing business as an authorized "Trustee" for Defendant HSBC. Plaintiff is unaware of the current status of Defendant AZTEC FORECLOSURE CORPORATION [hereinafter referred to as "AZTEC"].

## COMMON ALLEGATIONS

9.   Plaintiff respectfully requests of the Court leave to add new or further Defendants by leave of Court when and if such shall become known.

10.   On or about October 25, 2006, Plaintiff CHRISTOPHER MCKALPAIN purchased certain real property commonly known as 6938 Laurel Canyon Boulevard, Unit # 302,

PLAINTIFF'S COMPLAINT FOR DAMAGES, AND RESCISSION

City of North Hollywood, County of Los Angeles, State of California.  Said property bears the Assessor's Parcel Number (APN) 2321-011-077, and is more fully described in the grant deed and legal description appended hereto as **Exhibit "B"** and incorporated by reference.

11.     The Plaintiff financed the purchase of the property with a loan through Defendant DEUTSCHE by means of an initial Interest Only Adjustable Rate Note totaling $320,000.00 ("First Trust Deed") appended hereto and incorporated as **Exhibit "C"**, and a Fixed Rate Balloon Note totaling $80,000.00 ("Second Trust Deed") appended hereto and incorporated as **Exhibit "D"**.

12.     The Interest Only Adjustable Rate Note was based upon 7.200% yearly rate for the First Trust Deed financed by Defendant DEUTSCHE, set to adjust frequently. The Fixed Rate Balloon Note was based upon an Index of 10.990% yearly rate for the Second Trust Deed financed by Defendant DEUTSCHE.

13.     Plaintiff allege that Defendants, and each of them, neither explained the workings of the entire rate, how it is computed, nor its inherent volatility.

14.     Further, on information and belief, Plaintiff allege that the Defendants charged and obtained improper fees for the placement of their loan as "sub-prime" when they would have qualified for a prime rate mortgage which would have generated less in fees and interest for the Plaintiff.

15.     The First Trust Deed and Second Trust Deed were thereafter secured by a deed of trust to Defendant DEUTSCHE as a beneficiary.  Please see **Exhibit "E"** and **Exhibit "F"**.

16.     On information and belief and by means unknown, that debt was thereafter securitized and fractionalized and converted into securities traded across duly authorized public markets. The First Trust Deed was assigned from DEUTSCHE to Defendant HSBC, and was

4

**PLAINTIFF'S COMPLAINT FOR DAMAGES, AND RESCISSION**

serviced by Defendant OCWEN. The Second Trust Deed was also assigned from DEUTSCHE to Defendant HSBC, and was serviced by Defendant OCWEN.

17.    Defendant OCWEN provides services in various forms to be determined to others which were of such a nature as to render it a "Servicer" within the definition found within *26 USCA §2605.*

18.    Plaintiff CHRISTOPHER MCKALPAIN is, as he informed all of those involved in this mortgage, employed as a studio technician and as a result of the national economic slowdown, the Plaintiff experienced cash flow problems in 2007 through 2009. The Defendants knew or should have known, that a studio technician alone would not have the means on a consistent basis to afford the amount financed of $400,000.00.

19.    On or about April 8, 2009, Plaintiff received a Notice of Default executed by Defendant AZTEC. Please see **Exhibit "G"**.

20.    On or about July 14, 2009, Plaintiff received a Notice of Trustee's Sale executed by Defendant AZTEC. Please see **Exhibit "H"**.

21.    Plaintiff has been attempting to engage in a Loan Modification program with Defendant HSBC through their Loan Servicer Defendant OCWEN. Plaintiff performed all necessary requirements that Defendant OCWEN and Defendant HSBC requested in order for a Loan Modification to be processed. Unfortunately, both Defendants have failed to provide any meaningful Loan Modification offer that Plaintiff can afford.

### FIRST CAUSE OF ACTION
### VIOLATION OF *15 USCA 1611* ET SEQ.
### (ALL DEFENDANTS)

22.    Plaintiff repeats and realleges each and every allegation contained in the above paragraphs inclusive and incorporates same as though set forth at length.

**PLAINTIFF'S COMPLAINT FOR DAMAGES, AND RESCISSION**

23.     On information and belief, Plaintiff alleges that the Defendants, and each of them, are directly or through agents or employees, entities or persons, actively involved in the extension of credit, as said term is defined under the Truth in Lending Statute (TILA).

24.     On information and belief, Plaintiff alleges that Defendants, and each of them, being subject to the requirements of the Truth in Lending Act have violated the requirements of the said act in that among other things:

a.     They have refused and continued to refuse to validate and otherwise make a full accounting and required disclosures as to the true finance charges and fees;

b.     They have improperly retained funds belonging to Plaintiff in amounts to be determined; and

c. To disclose the status of the ownership of said loans.

25.     Plaintiff further alleges that these violations are such as to require rescission and or cancellation of the loan herein, and return of all funds received by Defendants from Plaintiff, and a return of possession of the property.

26.     Plaintiff further alleges that he is entitled to compensatory damages and an amount to be determined at trial, but which exceeds $100,000.

27.     Plaintiff further alleges that he is also entitled to attorneys' fees according to statute.

28.     On information and belief Plaintiff alleges that the Defendants acted in violation of the act, willfully, maliciously, oppressively and fraudulently and in conscious disregard for the rights of Plaintiff and, as such, Plaintiff is entitled to punitive damages.

## SECOND CAUSE OF ACTION
## VIOLATION OF *26 USCA 2605* ET SEQ.
## (ALL DEFENDANTS)

PLAINTIFF'S COMPLAINT FOR DAMAGES, AND RESCISSION

29.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs inclusive and incorporates same as though set forth at length.

30.     On information and belief, Plaintiff alleges that Defendants, and each of them, are such as to fall within the requirements of the Real Estate Settlement Procedures Act (RESPA).

31.     On information and belief, Plaintiff alleges that the Defendants, and each of them, placed loans for the purpose of unlawfully increasing and otherwise obtaining yield spread fees and amounts in excess of what would have been lawfully earned.

32.     On information and belief, Plaintiff further alleges that in addition to the requirements of RESPA, Defendant DEUTSCHE acted either individually or jointly with other Defendants as "Servicers" as that term is used within the act and either individually or jointly violated the requirements of *26 USCA §2605* (b) in that servicing contract or duties there under were transferred or hypothecated without required notice.

33.     Plaintiff further alleges that these violations are such as to require rescission and/or cancellation of the loan herein on and return of all funds received by Defendants from Plaintiff.

34.     Plaintiff further alleges that he is entitled to compensatory damages at an amount to be determined at trial.

35.     Plaintiff further alleges that he is also entitled to attorney fees according to statute.

**THIRD CAUSE OF ACTION**
**VIOLATION OF *15 USCA 1602* ET SEQ.**
**(ALL DEFENDANTS)**

36.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs inclusive and incorporates same as though set forth at length.

**PLAINTIFF'S COMPLAINT FOR DAMAGES, AND RESCISSION**

37.     On information and belief, Plaintiff alleges that the mortgage obtained by his through Defendant DEUTSCHE and thereafter by means unknown obtained and enforced by other Defendants herein, falls within the purview 1602 et seq., commonly known as the Home Ownership and Equity Protection Act of 1994.

38.     On information and belief, Plaintiff further alleges that the loan was placed in violation of the above act in that it was placed and administered and otherwise utilized without regard to Plaintiff income or cash flow and with the intention of inducing default.

39.     Plaintiff became aware of this extension upon discovery of the intent to wrongfully foreclose upon and sell their property.

40.     As a direct and legal consequence of the above conduct, Plaintiff has been damaged in amounts according to proof at time of trial, but which exceed $500,000.

## FOURTH CAUSE OF ACTION
## VIOLATION OF *15 USCA §1692* and CALIFORNIA CIVIL CODE § 1788
### (ALL DEFENDANTS)

41.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs inclusive and incorporates same as though set forth at length.

42.     On information and belief, Plaintiff alleges that the Defendant DEUTSCHE, and each of them, are "debt collectors" either directly or through agents as that term is used in both the United States Code and the California Civil Code at § 1788 et seq.

43.     Plaintiff alleges that they duly and properly on more than one occasion requested validation of the "debt" herein under both codes.

44.     The Plaintiff further alleges that Defendants did not respond to their demands in such a way as to meet the requirements of the act.

8

PLAINTIFF'S COMPLAINT FOR DAMAGES, AND RESCISSION

45.     The Plaintiff alleges that as such he is entitled to statutory damages under both acts.

## FIFTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY
## (ALL DEFENDANTS)

46.     Plaintiff repeats and realleges each and every allegation contained in paragraphs above inclusive and incorporates same as though set forth at length.

47.     At all times relevant hereto, Defendants created, accepted and acted in a fiduciary relationship of great trust and acted for and were the processors of property for the benefit of the Plaintiff.

48.     Defendants further placed themselves in a position of great trust by virtue of expertise represented by and through its employees.

49.     On information and belief, Plaintiff alleges that Defendants breached their fiduciary duties owed to the Plaintiff.  They have acted and continue to act for their own benefit and to the detriment of Plaintiff.

50.     Among other things, they have placed and negotiated loans without due care to the best interest of Plaintiff or for the protection of his rights thereunder.

51.     As a direct and legal result of said breaches of fiduciary duty, Plaintiff has suffered economic damage and loss of funds and payment of fees improperly incurred in an amount according to proof at time of trial.

52.     Defendants acted willfully and maliciously oppressively and fraudulently and in conscious disregard of the rights of Plaintiff, and as such Plaintiff is entitled to punitive damages.

## SIXTH CAUSE OF ACTION
## BREACH OF ORAL AGREEMENT
## (ALL DEFENDANTS)

PLAINTIFF'S COMPLAINT FOR DAMAGES, AND RESCISSION

53.     Plaintiff repeats and realleges each and every allegation contained in paragraphs above inclusive and incorporates same as though set forth at length.

54.     Plaintiff, through his own means and through Plaintiff's attorney representing his on his loan modification, was actively seeking a meaningful and sustainable modification of the terms of his loan agreement.

55.     Defendants and each of them, had set a date to sell the subject property at a foreclosure sale, which Defendants purportedly postponed and assured Plaintiff that the Property would not be sold and that the modification of Plaintiff's loan would be finalized upon receiving Defendants' requested documentation.

56.     Defendants and each of them, assured and induced Plaintiff into believing that Plaintiff's home would not be sold, and Plaintiff relied to his detriment on those assurances.

57.     Defendants and each of them, sold Plaintiff's home in a Trustee Sale without any notice to Plaintiff, breaching their promise to Plaintiff to postpone the sale.

58.     Had Plaintiff known that Defendants and each of them would not keep their promise to not sell his home in exchange for a Modification of his Loan Agreement, Plaintiff would have not detrimentally relied on that promise and would have file Bankruptcy to stop the sale and arrange a payment plan through a Chapter 13 Bankruptcy.

59.     As a direct and legal result of said acts by Defendants and each of them Plaintiff alleges that he has been damaged legally and proximately in amounts according to proof at time of trial.

## SEVENTH CAUSE OF ACTION
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
## (ALL DEFENDANTS)

PLAINTIFF'S COMPLAINT FOR DAMAGES, AND RESCISSION

60.     Plaintiff repeats and realleges each and every allegation contained in paragraphs above inclusive and incorporates same as though set forth at length.

61.     On information and belief Plaintiff alleges that at all times mentioned herein there existed between Plaintiff and Defendants, and each of them, either a direct or implied contractual covenant of good faith and fair dealing requiring Defendants and each of them to safeguard, protect or otherwise care for the assets and/or rights of the Plaintiff.  Said covenant prohibited them from activities interfering with or contrary to the rights of the Plaintiff.

62.     On information and belief, Plaintiff alleges that the attempts to foreclose upon the property lawfully belonging to Plaintiff without production of documents demonstrating the lawful rights for said foreclosure constitutes a breach of the said covenant of good faith and fair dealing.

63.     As a direct and legal result of said acts by Defendants and each of them Plaintiff alleges that he has been damaged legally and proximately in amounts according to proof at time of trial.

## EIGHTH CAUSE OF ACTION
## VIOLATION OF CIVIL RIGHTS UNDER
## *CALIFORNIA CIVIL CODE SECTION 51.5*
## (ALL DEFENDANTS)

64.     Plaintiff repeats and realleges each and every allegation contained in paragraphs above inclusive and incorporates same as though set forth at length.

65.     The conduct of Defendants violated California Civil Code Section 51.5 in that Defendants, business establishments, discriminated against, boycotted, or blacklisted, or refused to lend to, contract with, or refinance the Plaintiff based on his race, color, religion, ancestry, and national origin.

11

**PLAINTIFF'S COMPLAINT FOR DAMAGES, AND RESCISSION**

66.     As a direct and legal result of Defendants' violation of <u>California Civil Code</u> <u>Section 51.5</u> and other state constitutional rights, Plaintiff suffered violations of his civil rights.

67.     As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff suffered incidental and consequential damages and losses, all in an amount to be proven at time of trial.  Plaintiff claims such amount as damages together with prejudgment interest pursuant to <u>Civil Code § 3287</u> and any other provision of law providing for prejudgment interest.

68.     As a further direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff suffered and will continue to suffer humiliation, shame, despair, embarrassment, depression, and mental pain and anguish, all to Plaintiff's damage in an amount to be proven at time of trial.

69.     As a further direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff has incurred attorneys' fees in an amount to be determined, for which Plaintiff claims a sum to be established according to proof.

70.     The conduct of Defendants and their agents and employees as described herein was oppressive, fraudulent and malicious, done in conscious disregard of Plaintiff's rights, and done by managerial employees of Defendants, and each of them.  Plaintiff is thereby entitled to an award of punitive damages against Defendants, in an amount appropriate to punish and make an example of Defendants, and in an amount to conform to proof.

71.     By virtue of the provisions of <u>Civil Code § 52.1</u>, Plaintiff is entitled to and demands an award of reasonable attorney's fees.

### NINTH CAUSE OF ACTION
### VIOLATION OF *42 USC §1981*
### (ALL DEFENDANTS)

**PLAINTIFF'S COMPLAINT FOR DAMAGES, AND RESCISSION**

72.     Plaintiff repeats and realleges each and every allegation contained in paragraphs above inclusive and incorporates same as though set forth at length.

73.     This cause of action is brought pursuant to *42 U.S.C. § 1981*, et seq., which provides that all persons in the United States have the same right to make and enforce contracts.

74.     Plaintiff is informed and believes, and thereupon alleges that Defendants, and each of them, loaned Plaintiff an amount of $400,000.00 and that was unreasonable according to his employment and income and were careless in taking his case into consideration.

75.     Plaintiff seeks full compensation for the discriminatory acts he suffered.

76.     Plaintiff seeks an injunction to prohibit Defendants from engaging in the unfair business practices complained of herein.

77.     The acts complained of herein occurred, at least in part, within the last year preceding the filing of the complaint in this action.

78.     As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff suffered and will continue to suffer humiliation, shame, despair, embarrassment, depression, and mental pain and anguish, all to Plaintiff's damage in an amount to be proven at time of trial.

79.     As a further direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff has incurred attorney's fees in an amount to be determined, for which Plaintiff claims a sum to be established according to proof.

80.     The conduct of Defendant and their agents and employees as described herein was oppressive, fraudulent and malicious, done in conscious disregard of Plaintiff's rights and done by managerial employees of Defendants.  Plaintiff is thereby entitled to an award of punitive

**PLAINTIFF'S COMPLAINT FOR DAMAGES, AND RESCISSION**

damages against Defendants, in an amount appropriate to punish and make an example of

Defendants, and in an amount to conform to proof.

## TENTH CAUSE OF ACTION
## VIOLATION OF *42 USC §1983*
## (ALL DEFENDANTS)

81.     Plaintiff repeats and realleges each and every allegation contained in paragraphs

above inclusive and incorporates same as though set forth at length.

82.     This cause of action is brought pursuant to *42 U.S.C. § 1983,* which provides that

every person who subjects any citizen of the United States to a deprivation of their rights is

subject to penalty.

83.     As a direct, foreseeable, and proximate result of said wrongful acts by

Defendants, Plaintiff suffered and will continue to suffer humiliation, shame, despair,

embarrassment, depression, and mental pain and anguish, all to Plaintiff's damage in an amount

to be proven at time of trial.

84.     As a further direct, foreseeable, and proximate result of said wrongful acts by

Defendants, Plaintiff has incurred attorney's fees in an amount to be determined, for which

Plaintiff claims a sum to be established according to proof.

85.     The conduct of Defendants and their agents and employees as described herein

was oppressive, fraudulent and malicious, done in conscious disregard of Plaintiff's rights and

done by managerial employees of Defendants.  Plaintiff is thereby entitled to an award of

punitive damages against Defendants, in an amount appropriate to punish and make an example

of Defendants, and in an amount to conform to proof.

## ELEVENTH CAUSE OF ACTION
## VIOLATION OF *42 USC 2000D*
## (ALL DEFENDANTS)

14

86.     Plaintiff repeats and realleges each and every allegation contained in paragraphs above inclusive and incorporates same as though set forth at length.

87.     This cause of action is brought pursuant to *42 U.S.C. 2000d,* which provides that "no person in the United States shall, on the ground of race, color, gender or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance."

88.     Plaintiff is informed and believes and based thereon alleges that at all times herein mentioned Defendants have engaged in practices that are unlawful under *42 U.S.C. 2000d,* including but not limited to providing an exorbitant loan amount of $400,000.00, to an un-married man solely, with an inconsistent income from working as a studio technician, from a Hispanic background, with no down payment, and with negative credit reports from multiple reporting agencies.   The Defendants preyed upon this minority, and with reckless disregard to how he could make payments without default provided Plaintiff with a loan that he should have never qualified for, therefore getting his into a deep financial mess which he may not have ever been in had the Defendants done ample due diligence and concluded that he should not qualify for one hundred percent financing, on a non-conforming loan amount.

89.     Plaintiff seeks full compensation for the discriminatory acts he suffered.

90.     Plaintiff seeks an injunction to prohibit Defendants from engaging in the unfair business practices complained of herein.

91.     The acts complained of herein occurred, at least in part, within the last year preceding the filing of the complaint in this action.

92.     As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff suffered and will continue to suffer humiliation, shame, despair,

15

PLAINTIFF'S COMPLAINT FOR DAMAGES, AND RESCISSION

embarrassment, depression, and mental pain and anguish, all to Plaintiff's damage in an amount to be proven at time of trial.

93.     As a further direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff has incurred attorney's fees in an amount to be determined, for which Plaintiff claims a sum to be established according to proof.

94.     The conduct of Defendants and their agents and employees as described herein was oppressive, fraudulent and malicious, done in conscious disregard of Plaintiff's rights and done by managerial employees of Defendants.  Plaintiff is thereby entitled to an award of punitive damages against Defendants, in an amount appropriate to punish and make an example of Defendants, and in an amount to conform to proof.

**TWELFTH CAUSE OF ACTION**
**FAILURE TO MODIFY LOAN-CALIFORNIA CIVIL CODE SECTIONS: 2923.5 ET**
**SEQ. AND 2923.6**
**(ALL DEFENDANTS)**

95.     Plaintiff repeats and realleges each and every allegation contained in paragraphs above inclusive and incorporates same as though set forth at length.

96.     Plaintiff was in default of his loan payments and has been attempting to achieve a meaningful and sustainable modification of the terms of his loan agreement with Defendants. Plaintiff provided Defendants with all necessary and requested documents and information in order to achieve a Loan Modification. Defendants made no attempts in good faith to provide Plaintiff with a meaningful and sustainable Loan Modification and simply strung Plaintiff along until Defendants ultimately sold Plaintiff home in foreclosure proceedings.

97.     Defendants and each of them, have a duty, among others, to assess the Plaintiff's financial situation and explore options for the Plaintiff to avoid foreclosure (California Civil Code Section 2923.5 et seq.).

16

98.     Defendants and each of them, have a duty, among others, to implement a loan modification or workout plan for Plaintiff, in the best interest of their investors and/or loan pool when the loan is in payment default, or payment default is reasonably foreseeable, and anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis (California Civil Code Section 2923.6).

99.     Defendants and each of them, have failed to perform their duties under California Law, and chose to sell Plaintiff's home in a Trustee Sale.

100.    Defendants and each of them, received much less recovery selling Plaintiff's home in a foreclosure proceeding than had they have provided Plaintiff with a meaningful and sustainable Loan Modification as required by California Civil Code Section 2923.6.

101.    As a direct and legal result of said acts by Defendants and each of them, Plaintiff alleges that he has been damaged legally and proximately in amounts according to proof at time of trial.

### THIRTEENTH CAUSE OF ACTION
### WRONGFUL FORECLOSURE
### (ALL DEFENDANTS KNOWN OR UNKNOWN AND CLAIMING ANY INTEREST IN THE PROPERTY)

102.    Plaintiff repeats and realleges each and every allegation contained in paragraphs above inclusive and incorporates same as though set forth at length.

103.    Defendants knew or should have known that pursuant to the mandatory provisions of TILA, HOEPA, and Regulation Z, the Trust Deeds were rendered null and void for all purposes, by operation of law, by the TILA Rescission Notice, and there was no Trust Deed legally in existence upon which to foreclose and that Defendants were legally barred and prohibited from conducting a Nonjudicial Foreclosure of the Loans, Notes, and Trust Deeds, and

PLAINTIFF'S COMPLAINT FOR DAMAGES, AND RESCISSION

were legally barred and prohibited from conducting the purported Foreclosure Sale and causing issuance of the Trustee's Deed.

104.    Defendants nonetheless commenced, maintained and completed the Foreclosure and committed the Nonjudicial Foreclosure Statutes (California Civil Code Sections: 2924 et seq.) Violations and refused to comply with the mandatory requirements of TILA, HOEPA, and Regulation Z as set forth herein, including but not limited to delivering the Monetary Payment and the Trust Deed Reconveyances to Plaintiff.

105.    As a result, the preceding, the purported Foreclosure, Foreclosure Sale and Foreclosure Trustee's Deed were at all times null and void ab initio and of no legal effect whatsoever, and Defendants wrongfully foreclosed on the Home.

106.    As a direct and proximate result of the above-described actions and conduct constituting WRONGFUL FORECLOSURE, Plaintiff are entitled to judgment against Defendants for Wrongful Foreclosure, and for judgment canceling, setting aside, and vacating the Foreclosure, Foreclosure Sale and Foreclosure Trustee's Deed and any attempts to evict Plaintiff.

**FOURTEENTH CAUSE OF ACTION**
**QUIET TITLE**
**(ALL DEFENDANTS KNOWN OR UNKNOWN AND CLAIMING ANY**
**INTEREST IN THE PROPERTY)**

107.    Plaintiff repeats and realleges each and every allegation contained in paragraphs above inclusive and incorporates same as though set forth at length.

108.    Plaintiff is the owner in fee of certain real property commonly known as 6938 Laurel Canyon Boulevard, Unit # 302, City of North Hollywood, County of Los Angeles, State of California and more fully described in the grant deed and legal description appended hereto as **Exhibit "B"** and incorporated by reference.

18

109.   Plaintiff obtained simple title to the above described real property by Grant Deed dated and/or recorded in the office of the Recorder of the County of Los Angeles.

110.   Defendants claim an interest or estate in Plaintiff's above described property, disputing or denying Plaintiff's right to ownership and by contending that ownership is or will rest in them by means of a trustee's sale.

111.   Plaintiff alleges that Defendants have no such right of title or estate in said property in that sale proposed will be fraudulent or otherwise illegal and transfer no right to Defendants.

112.   Defendants have wrongfully interfered with or threaten to interfere with Plaintiff's use and enjoyment of the above described property in that they have dispossessed them.

113.   Defendants' dispossession of the Plaintiff has caused grave and irreparable injury to Plaintiff in that they have been deprived of the use and enjoyment of unique property.

114.   Plaintiff has no adequate remedy at law for the threatened and continuing conduct in that they do not have a home and potentially will lose all he has put into said home.  Said loss is not one which can be compensated by mere payment of damages.

115.   Plaintiff further alleges that the conduct herein is of such a character as to give them title to the above described property in fee.

### FIFTEENTH CAUSE OF ACTION
### DECLARATORY RELIEF
### (ALL DEFENDANTS)

116.   Plaintiff repeats and realleges each and every allegation contained in paragraphs above inclusive and incorporates same as though set forth at length.

PLAINTIFF'S COMPLAINT FOR DAMAGES, AND RESCISSION

117.    Pursuant to *28 USCA 2201et* seq., a dispute has arisen between and among the Plaintiff and the Defendants herein, and each of them, as to the duties and obligations of the respective parties with regard to the loan and/or foreclosure.

118.    These disputes concern but are not necessarily limited to the ownership and/or right of foreclosure.

119.    As these questions concern issues with regard to Plaintiff' home, they are thus required to seek this relief.

120.    Plaintiff further alleges that a declaration of rights and duties of the parties herein by the court is essential to determine the actual status and validity of the loan and any rights, duties and/or obligations as to the enforcement of it.

## PRAYER

**WHEREFORE** Plaintiff prays damages and other relief as follows:

1.    Compensatory damages according to proof;

2.    A judicial declaration of the rights duties and obligations of the parties hereto;

3.    Statutory damages;

4.    Punitive damages;

5.    Injunctive relief including the immediate issuance of a temporary restraining order and thereafter a preliminary injunction to maintain the status quo pending adjudication;

6.    Rescission;

7.    Reversal and Cancelation of Illegal Foreclosure, Foreclosure Sale and Trustee's Deed;

8.    Cancellation of Recorded Trust Deeds;

9.    Loan Modification;

**PLAINTIFF'S COMPLAINT FOR DAMAGES, AND RESCISSION**

10.     Attorney's fees according to statute;

11.     Costs of this suit; and

12.     Such other and further relief as this court shall deem fair equitable and just.

DATED:   March 11, 2010          By: _____

CHRISTOPHER MCKALPAIN, Plaintiff In Pro Per

**PLAINTIFF'S COMPLAINT FOR DAMAGES, AND RESCISSION**

# EXHIBIT "A"

**This page is part of your document - DO NOT DISCARD**



# 20091866619

**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/09/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 15.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 15.00 |



**L E A D S H E E T**



200912090220011

00001615881

002435888

**SEQ:**
**23**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

t29

---

**LOS ANGELES,CA    DOCUMENT: AS 2009.1866619**                                          **Page 1 of 3**

Printed on 3/4/2010 1:30:17 PM          Provided by DataTrace System

2

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY
Prepared by:  Laura Buxton
Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, Florida, 33409
Phone Number: 561-682-8835
678051423515
Attorney Code: 24044 BR

10000318
4331395


12/09/2009
*2009186619*

**ASSIGNMENT OF DEED OF TRUST**
**CALIFORNIA**

This **ASSIGNMENT OF DEED OF TRUST** is made and entered into as of the 30TH day of APRIL, 2007, from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**, whose address 3300 SW 34 Avenue, Suite 101, Ocala, FL 34474, its successors and assigns, as nominee for DB HOME LENDING LLC, its successors and assigns, ("Assignor) to **HSBC BANK USA, N.A., AS TRUSTEE ON BEHALF OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST AND FOR THE REGISTERED HOLDERS OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2007-HE4, ASSET BACKED PASS-THROUGH CERTIFICATES**, whose address is c/o Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, Florida, 33409, its successors and assigns, all its rights, title and interest in and to a certain mortgage duly recorded in the Office of the County Recorder of **LOS ANGELES** County, State of **CALIFORNIA**, as follows;

Trustor:  CHRISTOPHER MCKALPAIN
Trustee:  CHICAGO TITLE COMPANY
Beneficiary:  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ACTING SOLELY AS NOMINEE FOR DB HOME LENDING LLC
AMOUNT: $320,000.00
Document Date:  FEBRUARY 1, 2007
Date Recorded: 02/06/2007
Document/Instrument/Entry Number:  2007 0258043
Property Address:  6938 LAUREL CANYON BOULEVARD #302, LOS ANGELES, CA

*Property more particularly described in the above referenced recorded Deed of Trust*

Together with any and all notes and obligations therein described or referred to, the debt respectively secured thereby and all sums of money due and to become due thereon, with interest thereon, and attorney's fees and all other charges.
This Assignment is made without recourse, representation or warranty.

DATED: NOVEMBER 23, 2009.

23

3

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**
**ACTING SOLELY AS NOMINEE FOR DB HOME LENDING LLC**

BY: _____

NAME: Juan A. Pardo

TITLE: Vice President

State of Florida          )
County of Palm Beach  )

On NOVEMBER 23, 2009, before me,  ___Elsie  Ramirez_____, personally
appeared Juan A. Pardo who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Florida that the foregoing paragraph is true
and correct.

Witness my hand and official seal.

Notary: _____

NOTARY PUBLIC-STATE OF FLORIDA
Elsie Ramirez
Commission # DD914835
Expires:  AUG. 09, 2013
BONDED THRU ATLANTIC BONDING CO., INC.

MIN: 1004872-0000008486-9                    MERS Ph.#:  (888) 679 – 6377



**This page is part of your document - DO NOT DISCARD**

# 20100248699



**Pages:
0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**02/24/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**LEADSHEET**



201002240180009

00001969682



002554694

**SEQ:
15**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

t35

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

$\lambda$



0400356651

Prepared by: Maria Alvarez
Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, Florida, 33409
Phone Number: 561-682-8835

Attorney Code: 20924
09-507868

## ASSIGNMENT OF DEED OF TRUST
## CALIFORNIA

This **ASSIGNMENT OF DEED OF TRUST** is made and entered into as of the 8TH day of FEBRUARY, 2007, from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**, whose address 3300 SW 34 Avenue, Suite 101, Ocala, FL 34474, its successors and assigns, as nominee for DB HOME LENDING LLC, its successors and assigns, ("Assignor) to **HSBC BANK USA, N.A., AS TRUSTEE ON BEHALF OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST AND FOR THE REGISTERED HOLDERS OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2007-HE4, ASSET BACKED PASS-THROUGH CERTIFICATES**, whose address is c/o Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, Florida, 33409, its successors and assigns, all its rights, title and interest in and to a certain mortgage duly recorded in the Office of the County Recorder of **LOS ANGELES** County, State of **CALIFORNIA**, as follows;

Trustor: CHRISTOPHER MCKALPAIN
Trustee: CHICAGO TITLE COMPANY
Beneficiary:    MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ACTING SOLELY AS NOMINEE FOR DB HOME LENDING LLC
Document Date: FEBRUARY 1, 2007
Date Recorded: 02-06-2007
Document/Instrument/Entry Number: 20070258043
Property Address: 6938 LAUREL CANYON BOULEVARD #302, LOS ANGELES, CA

*Property more particularly described in the above referenced recorded Deed of Trust*

Together with any and all notes and obligations therein described or referred to, the debt respectively secured thereby and all sums of money due and to become due thereon, with interest thereon, and attorney's fees and all other charges.
This Assignment is made without recourse, representation or warranty.

DATED: JANUARY 27, 2009.

"This Instrument is being recorded as an ACCOMMODATION ONLY, with no Representation as to its effect upon title"

$15$

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

3

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**
**ACTING SOLELY AS NOMINEE FOR DB HOME LENDING LLC**

BY:
NAME: Scott Anderson
TITLE: Vice President

State of Florida      )
County of Palm Beach )

On JANUARY 27, 2009, before me, Leticia N. Arias, Notary Public personally appeared Scott Anderson, the Vice President for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ACTING SOLELY AS NOMINEE FOR DB HOME LENDING LLC, who proved to me on the basis of satisfactory evidence to the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

Notary: 

MIN: 1004872-0000008486-9

NOTARY PUBLIC-STATE OF FLORIDA
Leticia N. Arias
Commission #DD737904
Expires: NOV. 29, 2011
BONDED THRU ATLANTIC BONDING CO., INC.

MERS Ph.#:  (888) 679 – 6377

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

# EXHIBIT "B"

 

**This page is part of your document - DO NOT DISCARD**



Pages:
**20070258042**
004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**02/06/07 AT 08:00AM**

Fees:
Taxes: **$20.00**
Other: **$2,240.00**
Paid: **$0.00**
**$2,260.00**

**TitleCompany**

## TITLE(S) : DEED



L E A D    S H E E T

**Assessor's Identification Number (AIN)**
To be completed by Examiner OR Title Company in black ink.    **Number of AIN's Shown**

 **THIS FORM IS NOT TO BE DUPLICATED** 

# CHICAGO TITLE COMPANY

**RECORDING REQUESTED BY**

AND WHEN RECORDED MAIL TO:
Christopher McKalpain
6938 Laurel Canyon Blvd., #302
North Hollywood, CA 91605



02/08/07

**20070258042**

A.P.N.: 2321-011-(22,23,24,25,40)    Order No: 601001235-X07    Escrow No: 5-26572-DW

Space Above This Line for Recorder's Use Only

## GRANT DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s) THAT DOCUMENTARY TRANSFER TAX IS: COUNTY $440.00 & CITY $1,800.00
[ X ]  computed on full value of property conveyed, or
[ X ]  computed on full value less value of liens or encumbrances remaining at time of sale,
[  ]  unincorporated area;  [ X ] City of Los Angeles , and

FOR A VALUABLE CONSIDERATION, Receipt of which is hereby acknowledged,

   **6938 Laurel Canyon, LLC, a California limited liability company**

hereby GRANT(S) to

   **Christopher McKalpain, a Single Man**

the following described property in the City of Los Angeles, County of Los Angeles State of California;

   **See Complete Legal Description contained in Exhibit "A" attached hereto and made a part hereof.**

6938 Laurel Canyon, LLC, a California limited liability company
By: 6938 Laurel Canyon Manager, LLC, a California limited liability company
Its: Managing Member

By: _____
   Gidi Cohen, Manager
Document Date:  December 29, 2006

STATE OF CALIFORNIA               )SS
COUNTY OF LOS ANGELES        )
On JANUARY 18, 2007 before me. P. OROLOGAS, NOTARY PUBLIC
personally appeared GIDI COHEN

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature P. Orologas

This area for official notarial

**P. OROLOGAS**
Commission # 1527809
Notary Public - California
Los Angeles County
My Comm. Expires Nov 19, 2008

Mail Tax Statements to:   SAME AS ABOVE or Address Noted Below

3

EXHIBIT "A"


PARCEL 1:

A)  AN UNDIVIDED 1/50 INTEREST IN AND TO LOT 1 OF TRACT NO. 62391, IN THE CITY OF LOS
ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1316,
PAGES 69 AND 70 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM UNITS 101 TO 112, INCLUSIVE, 114 TO 117, INCLUSIVE, 201 TO 217,
INCLUSIVE AND 301 TO 317, INCLUSIVE, AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN
RECORDED JUNE 8, 2006 AS INSTRUMENT NO. 06-1258388, OFFICIAL RECORDS.

EXCEPTING THEREFROM, FOR THE BENEFIT OF GRANTOR, ITS SUCCESSORS IN INTEREST AND OTHERS,
EASEMENTS FOR ACCESS, USE, ENJOYMENT, REPAIRS, AND FOR OTHER PURPOSES, TOGETHER WITH
THE RIGHT TO GRANT THE SAME TO OTHERS, SUCH EXCLUSIVE USE COMMON AREA AS DEFINED,
DESCRIBED AND SHOWN IN THE CONDOMINIUM PLAN ABOVE MENTIONED AND THAT CERTAIN FIRST
AMENDMENT TO THE DECLARATION OF ESTABLISHMENT OF CONDITIONS, COVENANTS AND RESTRICTIONS
FOR LAUREL BLISS ("FIRST AMENDMENT") RECORDED ON JUNE 23, 2006 AS INSTRUMENT NO.
06-1381165, OFFICIAL RECORDS OF LOS ANGELES COUNTY, CALIFORNIA.

B)  UNIT  302 , AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN ABOVE MENTIONED.


PARCEL 2:

AN EXCLUSIVE EASEMENT FOR PARKING SPACE PURPOSES OVER THOSE AREAS NUMBERED P 72    (AND P 71
) AS SHOWN AND DEFINED AS EXCLUSIVE USE COMMON AREA ON THE CONDOMINIUM PLAN ABOVE
MENTIONED.

PARCEL 3:

NONEXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, USE, ENJOYMENT, DRAINAGE,
ENCROACHMENT, SUPPORT, MAINTENANCE, REPAIRS, AND FOR OTHER PURPOSES, ALL AS DESCRIBED
IN THE DECLARATION RECORDED.

07 025 8042

4

SUBJECT TO:

1.   TAXES FOR THE FISCAL YEAR.

2.   COVENANTS, CONDITIONS, RESTRICTIONS, RESERVATIONS, RIGHTS, RIGHTS OF WAY, EASEMENTS OF RECORD, IF ANY.

3.   THE "NOTICE OF SELLER'S ELECTION FOR HANDLING OF CONSTRUCTION CLAIMS PURSUANT TO CALIFORNIA CIVIL CODE SECTION 895, ET SEQ.," RECORDED ON JUNE 8, 2006 AS INSTRUMENT NO. 06-1258390, OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

4.   THE EFFECT OF THAT CERTAIN "AGREEMENT FOR DEVELOPMENT OF UNITS FOR LEASE OR SALE (15% ORDINANCE)," BY AND BETWEEN GRANTOR AND EXECUTIVE DIRECTOR OF THE HOUSING AUTHORITY OF THE CITY OF LOS ANGELES, RECORDED JUNE 21, 2005 AS INSTRUMENT NO. 05-454971, OFFICIAL RECORDS, WHICH AGREEMENT CONTAINS RESTRICTIONS REGARDING LOW AND MODERATE INCOME HOUSING.

5.   THE EFFECT OF THAT CERTAIN DOCUMENT RECORDED DECEMBER 22, 1994 AS INSTRUMENT NO. 94-2258980 OF OFFICIAL RECORDS, BY THE CITY OF LOS ANGELES, REGARDING THE INCLUSION OF THE REAL PROPERTY WITHIN THE BOUNDARIES OF THE EARTHQUAKE DISASTER ASSISTANCE PROJECT AREA FOR PORTIONS OF COUNCIL DISTRICT 7.

6.   ALL OTHER COVENANTS, CONDITIONS, RESTRICTIONS, RESERVATIONS, RIGHTS, RIGHTS-OF-WAY AND EASEMENTS OF RECORD AS WELL AS ANY OF SUCH MATTERS THAT ARE APPARENT.


BY ACCEPTANCE AND RECORDATION OF THIS DEED, AND BY ITS EXECUTION OF THIS DEED, GRANTEE HEREBY (A) ACCEPTS AND APPROVES ALL OF THE FOREGOING IN THIS DEED, (B) GRANTS TO GRANTOR AND LAUREL BLISS CONDOMINIUM HOMEOWERS' ASSOCIATION SUCH POWERS AND RIGHTS AS ARE SET FORTH IN THE DECLARATION, AND (C) ACCEPTS, APPROVES, ADOPTS, RATIFIES AND AGREES TO BE BOUND BY, AND TO ASSUME PERFORMANCE OF, ALL OF THE APPLICABLE REQUIREMENTS, COVENANTS, CONDITIONS, RESERVATIONS, RESTRICTIONS, EASEMENTS AND OTHER MATTERS SET FORTH IN THE DECLARATION, RECORDED JUNE 8, 2006 AS INSTRUMENT NO. 06-1258389 OFFICIAL RECORDS, AND ALL AMENDMENTS THERETO, ALL OF WHICH PROVISIONS ARE INCORPORATED HEREIN BY REFERENCE THERETO WITH THE SAME FORCE AND EFFECT AS THOUGH FULLY SET FORTH HEREIN AT LENGTH, AND AGREES TO PAY PROMPTLY WHEN DUE, ANY AND ALL ASSESSMENTS AS REQUIRED UNDER SAID DECLARATION.

GRANTEE _christopher Mckalpain_                    GRANTEE _____

GRANTEE _____                    GRANTEE _____

07 0258042

5

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of Los Angeles                    } ss.

On Jan 17, 2007 before me, IWALDO H. PINN NOTARY PUBLIC

Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally    appeared    Christopher McKalpan

Name(s) of Signer(s)

---

IWALDO H. PINN
COMM.# 1666207
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
MY COMM. EXPIRES MAY 17, 2010

☐ personally known to me

☑ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Place Notary Seal Above

Signature of Notary Public

------ **OPTIONAL** ------

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Individual | ☐ Individual |
| ☐ Corporate Officer — Title(s): ____ | ☐ Corporate Officer — Title(s): ____ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Attorney in Fact | ☐ Attorney in Fact |
| ☐ Trustee | ☐ Trustee |
| ☐ Guardian or Conservator | ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

© 2004 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402    Item No. 5907    Reorder: Call Toll-Free 1-800-876-6827

07 0258042

# EXHIBIT "C"

BORROWER'S COPY

# DOCUMENT SYSTEMS, INC.   *Loan Document Worksheet #* 12635_265485

| | |
|---|---|
| Company Name: DB HOME LENDING LLC | Account No.: 12635 |

| | | |
|---|---|---|
| PLAN CODE: 2YR6SPIOCW | ALT. LENDER CODE: 12635_DBHL1 | BROKER: NEW WORLD MORTGAGE INC |
| LOAN TYPE: CONVENTIONAL | PURPOSE: PURCHASE | RATE TYPE: Adjustable |
| PAYMENT TYPE: MONTHLY | LOAN #: 265485 | MIN #: 1004872-0000008486-9 |
| CASE #: | FHA SECTION NO.: | APPLICATION DATE: 01/24/2007 |
| RATE LOCK: | DOCUMENT DATE: 02/01/2007 | CLOSING DATE: |
| SIGNING DATE: | CANCEL DATE: | DISBURSEMENT DATE: |
| LOAN PROCEEDS TO: Title Company | REPRESENTATIVE: CLARK-CHAVEZ, LEAH | BRANCH: SOUTHERN CA - OC |

## BORROWERS/SELLERS

CORPORATE/TRUST NAME:                                    Type*                                          Type*

BORROWER #1: CHRISTOPHER MCKALPAIN XXX-XX-5990 I    BORROWER #2:
AKA/POA: CHRISTOPHER MC KALPAIN, CHRISTOPHER MC    AKA/POA:
BORROWER #3:    BORROWER #4:
AKA/POA:    AKA/POA:
BORROWER #5:    BORROWER #6:
AKA/POA:    AKA/POA:

VESTING TO READ: CHRISTOPHER MCKALPAIN, A SINGLE MAN

MAILING ADDRESS: 12312 SHERMAN WAY #222, NORTH HOLLYWOOD, CALIFORNIA 91605
SELLER CORPORATE/TRUST NAME:
SELLER #1:    SELLER #2:
SELLER ADDRESS:
*TYPE: I = Individual   T = Title Only   O = Officer   C = Co-signer   A = Attorney   S = Non-Title Spouse

## PROPERTY

PROPERTY ADDRESS: 6938 LAUREL CANYON BOULEVARD, #302   CITY: LOS ANGELES
COUNTY: LOS ANGELES    STATE: CALIFORNIA    ZIP: 91605
OWNER OCCUPIED: Yes    PROPERTY TYPE: Condominium    FLOOD ZONE: X
CONDO/PUD NAME: LAUREL BLISS    SECOND HOME: No
LEGAL DESCRIPTION:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 2321-011-022; 2321-011-023; 2321-011-024; 2321-011-025; 2321-011-040

## TERMS

| | | |
|---|---|---|
| RATE TYPE: Adjustable | GPM TYPE: | BUYDOWN TYPE: |
| APPRAISED VALUE: $ 400,000.00 | SALES PRICE: $ 400,000.00 | APPROVED JR. LIENS: $ 80,000.00 |
| LOAN AMOUNT: $ 320,000.00 | INITIAL INTEREST RATE   7.200% | TERM: (# MOS) 360 |
| AMORTIZATION TERM: (# MOS) 360 | PAYMENT: $ 1,920.00 Interest Only | FIRST PAYMENT DATE: 04/01/2007 |
| INT. CHANGE DATE: 03/01/2009 | PAYMENT CHANGE DATE: 04/01/2009 | MARGIN: 5.850 % |
| CURRENT INDEX: 5.383 % | CEILING (MAX) RATE: 13.200 % | FLOOR (MIN) RATE: 7.200 % |
| INITIAL RATE CAP: 3.000 % | SUBSEQUENT RATE CAP: 1.000 % | LIFETIME RATE CAP: 6.000 % |
| HELOC: Initial Advance $ | Draw Period:      months   Repayment Period:      months | Annual Charge? No |
| PREPAID INTEREST: 30 days @ $63.1233 = $1,893.70 | | PREPAID INTEREST PAID BY: Borrower |
| PREPAY PENALTY: Yes | PREPAY # MOS: 24 | SOFT PREPAY # MOS:   ASSUMABLE? No |

## CHARGES/FEES/PREMIUMS

| CHARGE | FEE TO* | AMOUNT | PD BY** | POC? | PART APR? | MISC. CHARGE DESCRIPTION | FEE TO* | AMOUNT | PD BY** | POC? |
|---|---|---|---|---|---|---|---|---|---|---|
| Appraisal | B | $ 375.00 | B | N | Y | ADMINISTRATION FEE | L | $ 1,060.00 | B | N |
| Amount Paid | | $ | | | Y | FLOOD ZONE DETERMINATION | L | $ 17.00 | B | N |
| Appraisal Review | | $ | | | Y | TIE IN FEE | O | $ 250.00 | B | N |
| Credit Report | | $ | | | Y | SIGNER FEE | O | $ 100.00 | B | N |
| Amount Paid | | $ | | | Y | COURIER FEE | O | $ 68.00 | B | N |
| Document | | $ | | | N | ENDORSEMENT FEE | O | $ 300.00 | B | N |
| Escrow | S | $ 1,050.00 | B | N | N | INS ENDORSEMENTS | O | $ 25.00 | B | N |
| Flood Certification | | $ | | | Y | SUB-ESCROW FEE | O | $ 62.50 | B | N |
| Funding | | $ | | | | | | | | |
| MIP Financed | | $ | | | | LOAN FEE TYPE | FEE TO* | POINTS | FIXED | PD BY** POC? |
| Notary | | $ | | | | Loan Origination Fee | B | 1.750 | | B |
| Processing | B | $ 995.00 | B | N | | Loan Origination Fee | | % + $ | | |
| Rec/Filing | O | $ 100.00 | B | N | | Loan Discount Fee | | % + $ | | |
| Tax Service | L | $ 85.00 | B | N | | | | % + $ | | |
| Title | O | $ 550.00 | B | N | | PREMIUM TYPE | | | | |
| Underwriting | | $ | | | | Yield Adjustment Credit (Rebate) | | % + $ | | |
| Warehouse | | $ | | | | Service Release Premium | | % + $ | | |
| Wire | | $ | | | | | | | | |

*FEE TO B = Broker   L = Lender   I = Investor   A = Affiliate   H = HUD   V = VA   S = Service Provider   O = Other
**PD BY B = Borrower   S = Seller   R = Broker   L = Lender   I = Investor   O = Other

# DOCUMENT SYSTEMS, INC.

**Loan Document Worksheet (continued)**

## MISCELLANEOUS/IMPOUNDS

| | PMT/YEAR | PAYMENT AMOUNT | MONTHLY | DUE DATE | # MOS | | |
|---|---|---|---|---|---|---|---|
| Property Taxes | _____ | $ _____ | $ _____ | | | 1ST Year PMI Premium | $ _____ |
| Hazard Insurance | _____ | $ _____ | $ _____ | | | Renewal Rate | % _____ |
| Flood Insurance | _____ | $ _____ | $ _____ | | | (Years 2-10) or Term | |
| PMI | _____ | $ _____ | $ _____ | | | PMI 2nd Renewal Rate | % _____ |
| | _____ | $ _____ | $ _____ | | | (Years 11-Term) or Term | |
| | _____ | $ _____ | $ _____ | | | Aggregate Adjust. | $ _____ |

## CLOSING/TITLE/OTHER SERVICE PROVIDERS

| | |
|---|---|
| **CLOSING CO.:** MARA ESCROW COMPANY | **OFFICER:** DIANE WELCH    **CLOSING #:** 526572DW |
| **ADDRESS:** 15821 VENTURA BLVD, SUITE 165, ENCINO, CALIFORNIA 91436 | **PHONE NUMBER:** (818) 386-2244 |
| **TITLE CO.:** CHICAGO TITLE COMPANY | **OFFICER:** BETTY CAPES & JOHN    **ORDER #:** 601001235X07 |
| **ADDRESS:** 700 SOUTH FLOWER STREET, SUITE 800, LOS ANGELES, CALIFORNIA 90017 | **PHONE NUMBER:** (213) 488-4300 |
| **REPORT DATE:** 01/03/2007 | **PARCEL #:** 2321-011-022; 2321-011-023; 2321-011-024; |
| **TAX MESSAGE:** BOTH HALVES PAID | **ENDORSEMENTS:** 100, 116, 8.1, ALTA6, 115, 115.1, 116.2 |
| **APPROVED ITEMS:** 1-24,27-37 | **CLOSING COUNTY:** LOS ANGELES |

| TYPE: | COMPANY NAME: | | |
|---|---|---|---|
| ADDRESS: | | | |
| PHONE NUMBER: | CONTACT: | REF. NUMBER | RELATION CODE: |
| TYPE: | COMPANY NAME: | | |
| ADDRESS: | | | |
| PHONE NUMBER: | CONTACT: | REF. NUMBER | RELATION CODE: |
| TYPE: | COMPANY NAME: | | |
| ADDRESS: | | | |
| PHONE NUMBER: | CONTACT: | REF. NUMBER | RELATION CODE: |

## CLOSING INSTRUCTIONS

1) DB HOME LENDING LLC REQUIRES LOAN DOCUMENTS TO BE SIGNED BY ESCROW OR AN APPROPRIATE SIGNING COMPANY, DOCS MAY NOT BE RELEASED TO ANY OTHER PARTY WITHOUT PRIOR AUTH FROM THE FUNDING DEPT
2) SEE ATTACHED DB HOME LENDING LLC LOAN APPROVAL FOR OUTSTANDING CONDITIONS
3) SEE ATTACHED QUICKAPP SUBMISSION SUMMARY/ SCHED OF DEBTS TO BE PAID AT CLOSE (IF APPLICABLE - PAID COLUMN WILL REFLECT Y)
4) CLOSING AGENT TO ACCEPT BORROWER(S) FUNDS ONLY FROM A VERIFIED INSTITUTION, DRAWN FROM THE VER. BORROWER(S)' ACCOUNT NAMED ON THE LOAN APPLICATION (UNLESS A CASHIER'S CHECK FROM A VERIFIED INSTITUTION IS PROVIDED).
5) CLOSING AGENT TO NOTIFY THE LENDER IN WRITING PRIOR TO CLOSING THE LOAN IF CLOSING AGENT HAS KNOWLEDGE OF ANOTHER TRANSACTION INVOLVING THE SUBJECT PROPERTY OR OF ADDITIONAL BORROWER TRANSACTIONS DURING THE PREVIOUS 180 DAYS,

## BENEFICIARY/TRUSTEE

**BENEFICIARY:** DB HOME LENDING LLC, A LIMITED LIABILITY COMPANY
26521 RANCHO PARKWAY SOUTH - STE 210, LAKE FOREST, CALIFORNIA 92630
**TRUSTEE:** CHICAGO TITLE COMPANY
700 SOUTH FLOWER STREET, SUITE 800, LOS ANGELES, CALIFORNIA 90017

## PAYMENT SCHEDULE

| | | |
|---|---|---|
| 24 | 1,920.00 | 04/01/2007 |
| 6 | 2,720.00 | 04/01/2009 |
| 6 | 2,986.67 | 10/01/2009 |
| 24 | 3,000.00 | 04/01/2010 |
| 299 | 3,194.37 | 04/01/2012 |
| 1 | 3,188.80 | 03/01/2037 |

| APR | SECTION 32? | STATE HIGH COST? | LATE DAYS | LATE % |
|---|---|---|---|---|
| 10.749% | N/A | NO | 15 | 5.000% |

**IMPORTANT NOTICE - PLEASE READ CAREFULLY:** We are proud of our reputation in the mortgage lending industry and make every effort to satisfy the mortgage lending needs of our customers.  However, absent a written agreement to the contrary, we make no warranties, express or implied.  Please note that it is your responsibility to verify the accuracy of this order.  Your responsibilities as customer include, but are not limited to, verifying the accuracy of all data entered on the loan worksheet, confirming the existence of all loan documents, and verifying the accuracy and completeness of all loan documents created after the loan data is processed.  The specified obligations apply whether or not you actually receive the documents after processing.  We are not responsible for errors or omissions discovered after the loan documents have been signed by the borrower.  In any event, our liability is limited to the fee we charged you for processing this order.

# DOCUMENT SYSTEMS, INC.          *Addendum to Loan Document Worksheet*

```
CHARGES/FEES/PREMIUMS CONTINUED...

PART APR?   MISC. CHARGE DESCRIPTION          FEE TO    AMOUNT     PD BY    POC
    Y          E-MAIL FEE                       O        150.00      B       N
    Y          AUDIT FEE                        O         25.00      B       N

CLOSING INSTRUCTIONS CONTINUED...

    CONCURENT, OR SUBSEQUENT TO THIS TRANSACTION, UNDISCLOSED
    TO THE LENDER, AND SHALL NOT CLOSE SUCH LOAN WITHOUT LENDER'S
    WRITTEN APPROVAL.
 6) CHANGES OR ADDITIONAL FEES WILL REQUIRE A PARTIAL REDRAW
 7) POA'S ARE NOT ALLOWED ON 2ND TD'S, 1ST TD'S MUST BE SPECIFIC
    AND HAVE PRIOR APPROVAL BY DB HOME LENDING LLC
 8) DOUBLE SIDED DOCUMENTS WILL NOT BE ACCEPTED BY DB HOME LENDING LLC
 .
 .              ****STANDARD ESCROW CONDITIONS****
 .
 1) CERT COPY OF ESCROW INSTRUCTIONS, EXECUTED BY ALL PARTIES
 2) MAX SELLER CONTRIBUTIONS (VARIES BY PROGRAM AND CLTV)
 3) CERT COPY OF DEED TO OUR BORROWER
 4) CERT COPIES OF CHECKS & ESC RECEIPTS FOR INITIAL DEPOSIT
    & FUNDS REQUIRED TO CLOSE
 5) HAZARD INSURANCE POLICY/BINDER (LOSS PAYEE - REF TO GENERAL
    CLOSING INSTRUCTIONS)
 6) FLOOD INSURANCE POLICY (IF IN FLOOD ZONE)
 7) WIRING INSTRUCTIONS
 8) CERT COPY OF EST HUD1 FOR BUYER AND SELLER
 9) DEMANDS TO SHOW ALL MORTGAGES CURRENT
10) HIGH COST TEST FOR SEC 32/STATE REQUIREMENTS -  BY DB HOME HOME LENDING LLC
11) FLOOD CERTIFICATION -  BY DB HOME LENDING LLC
12) VERBAL VOE FOR ALL BORROWER(S) - BY DB HOME LENDING LLC
13) TERMITE REPORT WITH CLEARANCE (IF APPLICABLE)
14) CLOSING PROTECTION LETTER (TABLE FUNDINGS)
15) COPY OF BORROWER(S) PHOTO IDENTIFICATION
16) CLOSER TO ENTER 2 FORMS OF IDENTIFICATION & THE RESIDENTIAL
    ADDRESS ON THE CUSTOMER IDENTIFICATION VERIFICATION FORM.
 .
 .
 .
 .
*********CALIFORNIA CLOSING AGENTS*********
YOU SHALL NOT FUND OR CAUSE THIS LOAN TO FUND UNLESS
YOU CAN DISBURSE THE FUNDS NO LATER THAN ONE DAY
FROM THE LENDER'S FUNDING DATE
OR YOU HAVE COMPLETED THE PER DIEM DISCLOSURE
PROPERLY AND THE DISCLOSURE WAS
EXECUTED BY THE BORROWER(S).  IN ANY EVENT,
THE DAILY INTEREST CAN NOT BE MORE THAN
ONE DAY FROM ESCROW DISBURSEMENT UNLESS
THE PER DIEM DISCLOSURE WAS COMPLETED CORRECTLY.
YOU MUST NOTIFY LENDER IMMEDIATELY IN THE EVENT THAT
YOU ADJUSTED THE DAILY INTEREST TO MORE THAN
ONE DAY FROM THE FUNDING DATE ON THE FINAL HUD1.
```

FROM: DB HOME LENDING LLC
26521 RANCHO PARKWAY SOUTH - STE 210
LAKE FOREST, CALIFORNIA 92630
Phone: (800)416-0614

TO: MARA ESCROW COMPANY
15821 VENTURA BLVD, SUITE 165
ENCINO, CALIFORNIA 91436
(818)386-2244
ATTN: DIANE WELCH

RE:  Borrower(s): CHRISTOPHER MCKALPAIN

Property Address:  6938 LAUREL CANYON BOULEVARD, #302
LOS ANGELES, CALIFORNIA 91605

Document Date: FEBRUARY 1, 2007

Closing Date:

Disbursement:

  Case No.:

  Loan No.: 265485

  App. No.:

  Order No.: 601001235X07

Escrow No.: 526572DW

# GENERAL CLOSING INSTRUCTIONS

Do not close or fund this loan unless ALL conditions in these closing instructions and any supplemental closing instructions have been satisfied. The total consideration in this transaction except for our loan proceeds and approved secondary financing must pass to you in the form of cash. Do not close or fund this loan if you have knowledge of a concurrent or subsequent transaction which would transfer the subject property.

You must follow these instructions exactly. These closing instructions can only be modified with our advance written approval. You shall be deemed to have accepted and to be bound by these closing instructions if you fail to notify us in writing to the contrary within 48 hours of your receipt hereof or if you disburse any funds to or for the account of the Borrower(s).

All documents with the exception of those to be recorded (Security Instrument, Riders, Corporation Assignment(s), Grant Deed, Quit Claim, Power of Attorney, etc.) must be returned to our office within  48 HOURS  of the signing. Please return certified copies of those documents that are to be recorded. Failure to comply with these instructions may delay funding.

## EXECUTION OF DOCUMENTS:

1.  Each Borrower must sign all documents exactly as his or her name appears on the blank line provided for his or her signature. All signatures must be witnessed if required or customary. All signature acknowledgements must be executed by a person authorized to take acknowledgements in the state of closing.

2.  Any correction to loan documents must be approved in writing by us in advance. No white-out permitted. Approved deletion should be made by marking a single line through the language being deleted. All additions and deletions must be initialed by all borrowers.

3.  All Powers of Attorney must be provided to and approved by us in advance. If approved, the Power of Attorney must be recorded in the same county(ies) in which the Security Instrument is recorded, a certified copy provided to us.

## RESCISSION:

1.  If the transaction is subject to rescission, provide each Borrower and each person having any ownership interest in the security property with two (2) copies of the completed Notice of Right to Cancel. The Notice of Right to Cancel must be properly completed (including all dates) and each borrower and person given two notices must execute an acknowledgement of receipt. Your failure to properly complete and provide the Notices of Right to Cancel to each person entitled to receive them will delay this closing.

2.  No Borrower or other person having an ownership interest in the Security Property may modify or waive his or her right to rescind without our prior written consent.

3.  If any Borrower or other person having an ownership interest in the security property indicates that he or she wishes to cancel this transaction, contact us immediately for further instructions.

## SURVEYS:

1.  A valid survey dated within 90 days of closing is required in areas where surveys are customary.

2.  The survey must contain all relevant and customary information and certifications and the legal description, lot size and street must agree with the appraisal and closing documents.

## HAZARD INSURANCE:

1.  The Borrower(s) must provide satisfactory evidence of hazard insurance coverage and flood insurance coverage if the Property is located in a special flood hazard area.

2.  Dwelling coverage must be equal to the lesser of the loan amount or the full replacement value of the property improvements, and must extend for either a term of at least one (1) year after the closing date for purchase transactions or six (6)  months after the closing date for refinance transactions.

3.  Loss payee/mortgagee clause to read:  DB HOME LENDING LLC
                                          ITS SUCCESSORS AND/OR ASSIGNS
                                          26521 RANCHO PARKWAY SOUTH - STE 210
                                          LAKE FOREST, CALIFORNIA 92630
                                          Loan Number: 265485

## ACKNOWLEDGED AND AGREED:

Settlement Agent DIANE WELCH

DocMagic ☎ 800-649-1362
www.docmagic.com

**FROM:** DB HOME LENDING LLC
26521 RANCHO PARKWAY SOUTH - STE 210
LAKE FOREST, CALIFORNIA 92630
Phone: (800)416-0614  / Fax:
(866)780-8074

**TO:** MARA ESCROW COMPANY
15821 VENTURA BLVD, SUITE 165
ENCINO, CALIFORNIA 91436
Phone: (818)386-2244

**ATTN:** DIANE WELCH

**RE:**   Borrower(s):CHRISTOPHER MCKALPAIN

Property Address: 6938 LAUREL CANYON BOULEVARD, #302
LOS ANGELES, CALIFORNIA 91605

Document Date: FEBRUARY 1, 2007

Closing Date:

Disbursement:

Case No.:

Loan No.: 265485

App. No.:

Order No.: 601001235X07

Escrow No.: 526572DW

# SPECIFIC CLOSING INSTRUCTIONS

## LOAN DOCUMENTS:

We enclose the following documents necessary to complete the above referenced loan transaction:

| | | |
|---|---|---|
| (X) Adjustable Rate Note | (X) Payment Letter | (X) Itemization of amt fin. |
| (X) Deed of Trust | (X) Transfer of Servicing | (X) Borrowers Cert. |
| (X) Adjustable Rate Rider | (X) Impound Auth. | (X) Allonge to Note |
| (X) Condominium Rider | (X) 4506T | (X) Insurance Requirements |
| (X) Prepayment Rider | (X) Settlement Statement Cert. | (X) Fair Lending Notice |
| (X) Program Disclosure | (X) Truth-in-Lending | (X) Worksheets |

Deliver one (1) copy of all loan documents to the Borrower(s); deliver one (1) copy of the Federal Truth-In-Lending Disclosure
Statement to each Borrower.

## LOAN TERMS:

Loan Amount:  320,000.00
Initial Advance:
Sales Price:  400,000.00
Term (Months):  360
Interest Rate:  7.200
Initial Payment:  1,920.00
First Payment Date:  04/01/07
Last Payment Date:  03/01/37

ARM Loan: (X) Yes  ( ) No
Index:  5.383
Margin:  5.850
Periodic Rate Cap:  1.000
Lifetime Rate Cap:  6.000
Lifetime Rate Floor:  7.200
Interest Change Date:  03/01/09
Payment Change Date:  04/01/09
Loan Purpose:  PURCHASE

## PAYOFF REQUIREMENTS:

It is a condition to the funding of this loan that the following payoffs be made through this closing.  Indicate payoffs on the
HUD-1 Settlement Statement or provide other satisfactory evidence of payoff:

## CONDITIONS TO BE SATISFIED PRIOR TO DISBURSEMENT OF LOAN PROCEEDS:

1) DB HOME LENDING LLC REQUIRES LOAN DOCUMENTS TO BE SIGNED BY ESCROW OR AN
APPROPRIATE SIGNING COMPANY, DOCS MAY NOT BE RELEASED TO ANY
OTHER PARTY WITHOUT PRIOR AUTH FROM THE FUNDING DEPT
**SEE ATTACHED ADDENDUM TO CLOSING INSTRUCTIONS**

WE ARE TO BE AT NO EXPENSE IN THIS TRANSACTION

## TITLE INSURANCE REQUIREMENTS:

You are authorized to use funds for the account of the Borrowers and to record all instruments when you comply with the
following:

1. THIS LOAN MUST RECORD IN 1ST  LIEN POSITION ON OR PRIOR TO THE DISBURSEMENT DATE
NOTED ABOVE. PROVIDE DUPLICATE ORIGINALS OF THE ALTA TITLE POLICY.

2. Vesting to read: CHRISTOPHER MCKALPAIN, A SINGLE MAN

3. Title Policy must contain the following endorsements (or their equivalents):   100,116,8.1,ALTA6,115,115.1,11

4. ALTA Title Policy must be free from liens, encumbrances, easements, encroachments and other title matters except
(i) the lien of our loan in the amount of our loan on the property described herein showing the Instrument or
Document Number and the date of recording of the Security Instrument; (ii) general, specific, state, county, city,
school or other taxes and assessments not yet due or payable:  (BOTH HALVES PAID);
(iii) other items as permitted by us; and (iv) the following items as shown on the preliminary title report,
commitment, binder or equivalent dated  JANUARY 3, 2007; 1-24,27-37                             .

## SECONDARY FINANCING:

Secondary financing in the amount of $  80,000.00               has been approved.

---

SPECIFIC CLOSING INSTRUCTIONS
05/05/05

Page 1 of 2

*DocMagic* ℮*Forms* 800-649-1362
www.docmagic.com

**ESTIMATE OF FEES AND COSTS:**

| ITEM | AMOUNT | POC | PAID BY |
|---|---|---|---|
| LOAN ORIGINATION FEE to: NEW WORLD MORTGAGE I | $5,600.00 | | Borrower |
| ADMINISTRATION FEE to: DB HOME LENDING LLC | $1,060.00 | | Borrower |
| FLOOD ZONE DETERMINATION to: DB HOME LENDING | $17.00 | | Borrower |
| TAX SERVICE FEE to: DB HOME LENDING LLC | $85.00 | | Borrower |
| APPRAISAL FEE to: NEW WORLD MORTGAGE INC | $375.00 | | Borrower |
| PROCESSING FEE to: NEW WORLD MORTGAGE INC | $995.00 | | Borrower |
| ESCROW FEE to: MARA ESCROW COMPANY | $1,050.00 | | Borrower |
| TIE IN FEE to: Other | $250.00 | | Borrower |
| SIGNER FEE to: Other | $100.00 | | Borrower |
| COURIER FEE to: Other | $68.00 | | Borrower |
| TITLE FEE to: Other | $550.00 | | Borrower |
| ENDORSEMENT FEE to: Other | $300.00 | | Borrower |
| INS ENDORSEMENTS to: Other | $25.00 | | Borrower |
| SUB-ESCROW FEE to: Other | $62.50 | | Borrower |
| E-MAIL FEE to: Other | $150.00 | | Borrower |
| AUDIT FEE to: Other | $25.00 | | Borrower |
| REC/FILING FEE to: Other | $100.00 | | Borrower |

Subtotal of Estimated Fees and Costs: $ ___10,812.50___

**PER DIEM INTEREST:**

From: _____   To: 03/01/07
       (Anticipated Closing Date)

_30_ days at $ ___63.1233___ per day   Subtotal of Per Diem Interest: $ ___1,893.70___

**IMPOUNDS/ESCROWS:**

Impound/escrow checks should be made payable to and sent to us together with the original final HUD-1 Settlement Statement.

| | | month(s) at $_____ | per month = $_____ |
|---|---|---|---|
| | | month(s) at $_____ | per month = $_____ |
| | | month(s) at $_____ | per month = $_____ |
| | | month(s) at $_____ | per month = $_____ |
| | | month(s) at $_____ | per month = $_____ |
| | | month(s) at $_____ | per month = $_____ |

Aggregate Escrow Adjustment:   $ _____

Impound Subtotal:   $ ___0.00___
Mortgage Ins. Premium:   $ _____
**TOTAL OF FEES AND COSTS:**   $ ___12,706.20___

**HUD-1 SETTLEMENT STATEMENT:**

The final HUD-1 Settlement Statement must be completed at settlement and must accurately reflect all receipts and disbursements indicated in these closing instructions and any amended closing instructions subsequent hereto. If any changes to fees occur documents may need to be re-drawn and re-signed. Fax a certified copy of the final HUD-1 Settlement Statement to   DB HOME LENDING LLC @ (866)780-8074
Attention: Quality Assurance. Send the original final HUD-1 Settlement Statement to us at the following address within 24 hours of settlement:   26521 RANCHO PARKWAY SOUTH - STE 210, LAKE FOREST, CALIFORNIA 92630

**ADDITIONAL INFORMATION:** BORROWER MUST SIGN AND DATE THESE CLOSING INSTRUCTIONS.

If for any reason this loan does not close within 48 hours of your receipt of funds, immediately return all documents to Lender and wire all funds only to:   DB HOME LENDING LLC
26521 RANCHO PARKWAY SOUTH - STE 210, LAKE FOREST, CALIFORNIA 92630
If you have any questions regarding any of these instructions, please contact   DB HOME LENDING LLC
at (800)416-0614

**BORROWER ACKNOWLEDGMENT:** I/We have read and acknowledged receipt of these Closing Instructions.

Borrower   CHRISTOPHER MCKALPAIN   Date _____   Borrower _____   Date _____

Borrower _____   Date _____   Borrower _____   Date _____

Borrower _____   Date _____   Borrower _____   Date _____

**ACKNOWLEDGED AND AGREED:**

Settlement Agent   Date _____
DIANE WELCH

FROM: DB HOME LENDING LLC
26521 RANCHO PARKWAY SOUTH - STE 210
LAKE FOREST, CALIFORNIA 92630
Phone:(800)416-0614/
FAX:(866)780-8074

TO: MARA ESCROW COMPANY
15821 VENTURA BLVD, SUITE 165
ENCINO, CALIFORNIA 91436
Phone: (818)386-2244

ATTN: DIANE WELCH

RE:  Borrower(s): CHRISTOPHER MCKALPAIN

Property Address: 6938 LAUREL CANYON BOULEVARD, #302
LOS ANGELES, CALIFORNIA 91605

Document Date: FEBRUARY 1, 2007

Closing Date:

Disbursement Date:

Case No.:

Loan No.: 265485

App. No.:

Order No.: 601001235X07

Escrow No.: 526572DW

## ADDENDUM TO CLOSING INSTRUCTIONS
(Additional conditions to be satisfied prior to disbursement of loan proceeds)

2) SEE ATTACHED DB HOME LENDING LLC LOAN APPROVAL FOR OUTSTANDING
   CONDITIONS
3) SEE ATTACHED QUICKAPP SUBMISSION SUMMARY/ SCHED OF  DEBTS TO
   BE PAID AT CLOSE (IF APPLICABLE - PAID COLUMN WILL REFLECT Y)
4) CLOSING AGENT TO ACCEPT BORROWER(S) FUNDS ONLY FROM A
   VERIFIED INSTITUTION, DRAWN FROM THE VER. BORROWER(S)'
   ACCOUNT NAMED ON THE LOAN APPLICATION (UNLESS A CASHIER'S
   CHECK FROM A VERIFIED INSTITUTION IS PROVIDED).
5) CLOSING AGENT TO NOTIFY THE LENDER IN WRITING PRIOR TO CLOSING
   THE LOAN IF CLOSING AGENT HAS KNOWLEDGE OF ANOTHER
   TRANSACTION INVOLVING THE SUBJECT PROPERTY OR OF ADDITIONAL
   BORROWER TRANSACTIONS DURING THE PREVIOUS 180 DAYS,
   CONCURENT, OR SUBSEQUENT TO THIS TRANSACTION, UNDISCLOSED
   TO THE LENDER, AND SHALL NOT CLOSE SUCH LOAN WITHOUT LENDER'S
   WRITTEN APPROVAL.
6) CHANGES OR ADDITIONAL FEES WILL REQUIRE A PARTIAL REDRAW
7) POA'S ARE NOT ALLOWED ON 2ND TD'S, 1ST TD'S MUST BE SPECIFIC
   AND HAVE PRIOR APPROVAL BY DB HOME LENDING LLC
8) DOUBLE SIDED DOCUMENTS WILL NOT BE ACCEPTED BY DB HOME LENDING
   LLC

       ****STANDARD ESCROW CONDITIONS****

1) CERT COPY OF ESCROW INSTRUCTIONS, EXECUTED BY ALL PARTIES
2) MAX SELLER CONTRIBUTIONS (VARIES BY PROGRAM AND CLTV)
3) CERT COPY OF DEED TO OUR BORROWER
4) CERT COPIES OF CHECKS & ESC RECEIPTS FOR INITIAL DEPOSIT
   & FUNDS REQUIRED TO CLOSE
5) HAZARD INSURANCE POLICY/BINDER (LOSS PAYEE - REF TO GENERAL
   CLOSING INSTRUCTIONS)
6) FLOOD INSURANCE POLICY (IF IN FLOOD ZONE)
7) WIRING INSTRUCTIONS
8) CERT COPY OF EST HUD1 FOR BUYER AND SELLER
9) DEMANDS TO SHOW ALL MORTGAGES CURRENT
10) HIGH COST TEST FOR SEC 32/STATE REQUIREMENTS - BY DB HOME
    HOME LENDING LLC
11) FLOOD CERTIFICATION - BY DB HOME LENDING LLC
12) VERBAL VOE FOR ALL BORROWER(S) - BY DB HOME LENDING LLC
13) TERMITE REPORT WITH CLEARANCE (IF APPLICABLE)
14) CLOSING PROTECTION LETTER (TABLE FUNDINGS)
15) COPY OF BORROWER(S) PHOTO IDENTIFICATION
16) CLOSER TO ENTER 2 FORMS OF IDENTIFICATION & THE RESIDENTIAL
    ADDRESS ON THE CUSTOMER IDENTIFICATION VERIFICATION FORM.

**ACKNOWLEDGED AND AGREED:**

_____          _____
Settlement  Agent                              Date
DIANE WELCH

FROM: DB HOME LENDING LLC
26521 RANCHO PARKWAY SOUTH - STE 210
LAKE FOREST, CALIFORNIA 92630
Phone:(800)416-0614/
FAX:(866)780-8074

TO: MARA ESCROW COMPANY
15821 VENTURA BLVD, SUITE 165
ENCINO, CALIFORNIA 91436
Phone: (818)386-2244

ATTN: DIANE WELCH

RE: Borrower(s): CHRISTOPHER MCKALPAIN

Property Address: 6938 LAUREL CANYON BOULEVARD, #302
LOS ANGELES, CALIFORNIA 91605

Document Date: FEBRUARY 1, 2007

Closing Date:

Disbursement Date:

Case No.:

Loan No.: 265485

App. No.:

Order No.: 601001235X07

Escrow No.: 526572DW

( CONTINUED )

## ADDENDUM TO CLOSING INSTRUCTIONS
(Additional conditions to be satisfied prior to disbursement of loan proceeds)

.
.
.
.
********CALIFORNIA CLOSING AGENTS********
YOU SHALL NOT FUND OR CAUSE THIS LOAN TO FUND UNLESS
YOU CAN DISBURSE THE FUNDS NO LATER THAN ONE DAY
FROM THE LENDER'S FUNDING DATE
OR YOU HAVE COMPLETED THE PER DIEM DISCLOSURE
PROPERLY AND THE DISCLOSURE WAS
EXECUTED BY THE BORROWER(S).  IN ANY EVENT,
THE DAILY INTEREST CAN NOT BE MORE THAN
ONE DAY FROM ESCROW DISBURSEMENT UNLESS
THE PER DIEM DISCLOSURE WAS COMPLETED CORRECTLY.
YOU MUST NOTIFY LENDER IMMEDIATELY IN THE EVENT THAT
YOU ADJUSTED THE DAILY INTEREST TO MORE THAN
ONE DAY FROM THE FUNDING DATE ON THE FINAL HUD1.

**ACKNOWLEDGED AND AGREED:**

_____          _____
Settlement  Agent                              Date
DIANE WELCH

FROM: DB HOME LENDING LLC
       26521 RANCHO PARKWAY SOUTH - STE 210
       LAKE FOREST, CALIFORNIA 92630
       Phone:(800)416-0614/
       FAX:(866)780-8074
  TO: MARA ESCROW COMPANY
       15821 VENTURA BLVD, SUITE 165
       ENCINO, CALIFORNIA 91436
       Phone: (818)386-2244
ATTN: DIANE WELCH

  RE:  Borrower(s): CHRISTOPHER MCKALPAIN

       Property Address:  6938 LAUREL CANYON BOULEVARD, #302
       LOS ANGELES, CALIFORNIA 91605

| | |
|---|---|
| Document Date: | FEBRUARY 1, 2007 |
| Closing Date: | |
| Disbursement: | |
| Case No.: | |
| Loan No.: | 265485 |
| App. No.: | |
| Order No.: | 601001235X07 |
| Escrow No.: | 526572DW |

# SPECIFIC CLOSING INSTRUCTIONS

## LOAN DOCUMENTS:

We enclose the following documents necessary to complete the above referenced loan transaction:

| | | |
|---|---|---|
| (X) Adjustable Rate Note | (X) Payment Letter | (X) Itemization of amt fin. |
| (X) Deed of Trust | (X) Transfer of Servicing | (X) Borrowers Cert. |
| (X) Adjustable Rate Rider | (X) Impound Auth. | (X) Allonge to Note |
| (X) Condominium Rider | (X) 4506T | (X) Insurance Requirements |
| (X) Prepayment Rider | (X) Settlement Statement Cert. | (X) Fair Lending Notice |
| (X) Program Disclosure | (X) Truth-in-Lending | (X) Worksheets |

Deliver one (1) copy of all loan documents to the Borrower(s); deliver one (1) copy of the Federal Truth-In-Lending Disclosure Statement to each Borrower.

## LOAN TERMS:

Loan Amount: 320,000.00
Initial Advance:
Sales Price: 400,000.00
Term (Months): 360
Interest Rate: 7.200
Initial Payment: 1,920.00
First Payment Date: APRIL 1, 2007
Last Payment Date: MARCH 1, 2037

ARM Loan: (X) Yes  ( ) No
Index: 5.383
Margin: 5.850
Periodic Rate Cap: 1.000
Lifetime Rate Cap: 6.000
Lifetime Rate Floor: 7.200
Interest Change Date: MARCH 1, 2009
Payment Change Date: APRIL 1, 2009
Loan Purpose: PURCHASE

## PAYOFF REQUIREMENTS:

It is a condition to the funding of this loan that the following payoffs be made through this closing. Indicate payoffs on the HUD-1 Settlement Statement or provide other satisfactory evidence of payoff:

## CONDITIONS TO BE SATISFIED PRIOR TO DISBURSEMENT OF LOAN PROCEEDS:

1) DB HOME LENDING LLC REQUIRES LOAN DOCUMENTS TO BE SIGNED BY ESCROW OR AN
   APPROPRIATE SIGNING COMPANY, DOCS MAY NOT BE RELEASED TO ANY
   OTHER PARTY WITHOUT PRIOR AUTH FROM THE FUNDING DEPT
**SEE ATTACHED ADDENDUM TO CLOSING INSTRUCTIONS**

WE ARE TO BE AT NO EXPENSE IN THIS TRANSACTION

## TITLE INSURANCE REQUIREMENTS:

You are authorized to use funds for the account of the Borrowers and to record all instruments when you comply with the following:

1. THIS LOAN MUST RECORD IN 1ST LIEN POSITION ON OR PRIOR TO THE DISBURSEMENT DATE NOTED ABOVE. PROVIDE DUPLICATE ORIGINALS OF THE ALTA TITLE POLICY.

2. Vesting to read:  CHRISTOPHER MCKALPAIN, A SINGLE MAN

3. Title Policy must contain the following endorsements (or their equivalents): 100,116,8.1,ALTA6,115,115.1,116

4. ALTA Title Policy must be free from liens, encumbrances, easements, encroachments and other title matters except (i) the lien of our loan in the amount of our loan on the property described herein showing the Instrument or Document Number and the date of recording of the Security Instrument; (ii) general, specific, state, county, city, school or other taxes and assessments not yet due or payable:  ( BOTH HALVES PAID ) _____ ; (iii) other items as permitted by us; and (iv) the following items as shown on the preliminary title report, commitment, binder or equivalent dated JANUARY 3, 2007: 1-24,27-37 _____ .

## SECONDARY FINANCING:

Secondary financing in the amount of $  80,000.00           has been approved.

**ESTIMATE OF FEES AND COSTS:**

| ITEM | AMOUNT | POC | PAID BY |
|------|--------|-----|---------|
| LOAN ORIGINATION FEE to: NEW WORLD MORTGAGE I | $5,600.00 | | Borrower |
| ADMINISTRATION FEE to: DB HOME LENDING LLC | $1,060.00 | | Borrower |
| FLOOD ZONE DETERMINATION to: DB HOME LENDING | $17.00 | | Borrower |
| TAX SERVICE FEE to: DB HOME LENDING LLC | $85.00 | | Borrower |
| APPRAISAL FEE to: NEW WORLD MORTGAGE INC | $375.00 | | Borrower |
| PROCESSING FEE to: NEW WORLD MORTGAGE INC | $995.00 | | Borrower |
| ESCROW FEE to: MARA ESCROW COMPANY | $1,050.00 | | Borrower |
| TIE IN FEE to: Other | $250.00 | | Borrower |
| SIGNER FEE to: Other | $100.00 | | Borrower |
| COURIER FEE to: Other | $68.00 | | Borrower |
| TITLE FEE to: Other | $550.00 | | Borrower |
| ENDORSEMENT FEE to: Other | $300.00 | | Borrower |
| INS ENDORSEMENTS to: Other | $25.00 | | Borrower |
| SUB-ESCROW FEE to: Other | $62.50 | | Borrower |
| E-MAIL FEE to: Other | $150.00 | | Borrower |
| AUDIT FEE to: Other | $25.00 | | Borrower |
| REC/FILING FEE to: Other | $100.00 | | Borrower |

Subtotal of Estimated Fees and Costs: $ ___10,812.50

**PER DIEM INTEREST:**

From: _____   To: 03/01/07
(Anticipated Closing Date)

__30__ days at $ _63.1233_ per day    Subtotal of Per Diem Interest:    $ ____1,893.70

**IMPOUNDS/ESCROWS:**

Impound/escrow checks should be made payable to and sent to us together with the original final HUD-1 Settlement Statement.

| _____ | _____ month(s) at $_____ | per month = $_____ |
|---|---|---|
| _____ | _____ month(s) at $_____ | per month = $_____ |
| _____ | _____ month(s) at $_____ | per month = $_____ |
| _____ | _____ month(s) at $_____ | per month = $_____ |
| _____ | _____ month(s) at $_____ | per month = $_____ |

Aggregate Escrow Adjustment:    $ _____

Impound Subtotal:    $ _____0.00
Mortgage Ins. Premium:    $ _____
**TOTAL OF FEES AND COSTS:**    $ ___12,706.20

**HUD-1 SETTLEMENT STATEMENT:**

The final HUD-1 Settlement Statement must be completed at settlement and must accurately reflect all receipts and disbursements indicated in these closing instructions and any amended closing instructions subsequent hereto. If any changes to fees occur documents may need to be re-drawn and re-signed. Fax a certified copy of the final HUD-1 Settlement Statement to DB HOME LENDING LLC @ (866) 780-8074

Attention: Quality Assurance. Send the original final HUD-1 Settlement Statement to us at the following address within 24 hours of settlement: DB HOME LENDING LLC, 26521 RANCHO PARKWAY SOUTH - STE 210, LAKE FOREST, CALIFORNIA 92630, Phone: (800) 416-0614/ FAX: (866) 780-8074

ADDITIONAL INFORMATION: BORROWER MUST SIGN AND DATE THESE CLOSING INSTRUCTIONS.

If for any reason this loan does not close within 48 hours of your receipt of funds, immediately return all documents to Lender and wire all funds only to: DB HOME LENDING LLC
26521 RANCHO PARKWAY SOUTH - STE 210, LAKE FOREST, CALIFORNIA 92630

If you have any questions regarding any of these instructions, please contact  DB HOME LENDING LLC
at 800) 416-0614

**BORROWER ACKNOWLEDGMENT:**  I/We have read and acknowledged receipt of these Closing Instructions.

Borrower   CHRISTOPHER MCKALFAIN    Date        Borrower _____    Date

Borrower _____    Date        Borrower _____    Date

Borrower _____    Date        Borrower _____    Date

**ACKNOWLEDGED AND AGREED:**

Settlement Agent    Date
DIANE WELCH

MIN: 1004872-0000008486-9                           Loan Number: 265485

## InterestOnly ADJUSTABLE RATE NOTE
(Six-Month LIBOR Index (As Published in *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

FEBRUARY 1, 2007              LAKE FOREST              CALIFORNIA
    [Date]                        [City]                  [State]

6938 LAUREL CANYON BOULEVARD, #302, LOS ANGELES, CALIFORNIA 91605
                                     [Property Address]

**1.  BORROWER'S PROMISE TO PAY**
    In return for a loan that I have received, I promise to pay U.S. $ 320,000.00    (this amount is called "Principal"), plus interest, to the order of Lender. Lender is DB HOME LENDING LLC, A CALIFORNIA LIMITED LIABILITY COMPANY
I will make all payments under this Note in the form of cash, check or money order.
    I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**
    Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   7.200  %. The interest rate I will pay may change in accordance with Section 4 of this Note.
    The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.  PAYMENTS**
    **(A) Time and Place of Payments**
    I will make a payment on the        1st   day of every month, beginning on APRIL 1, 2007          .
Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.
    I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on MARCH 1, 2037      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
    I will make my monthly payments at 26521 RANCHO PARKWAY SOUTH - STE 210, LAKE FOREST, CALIFORNIA 92630
or at a different place if required by the Note Holder.
    **(B) Amount of My Initial Monthly Payments**
    My initial monthly payment will be in the amount of U.S. $ 1,920.00      before the First Principal and Interest Payment Due Date, thereafter it will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.
    **(C) Monthly Payment Changes**
    Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.  ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    **(A) Change Dates**
    The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of MARCH,   1    , 2009 , and the adjustable interest rate I will pay may change on that day every sixth month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

CONV
● BC-ARM InterestOnly Note
FE-4278 (0602)                          Page 1 of 3                          Initials: _____

FROM: DB HOME LENDING LLC
26521 RANCHO PARKWAY SOUTH - STE 210
LAKE FOREST, CALIFORNIA 92630
Phone:(800)416-0614/
FAX:(866)780-8074

TO: MARA ESCROW COMPANY
15821 VENTURA BLVD, SUITE 165
ENCINO, CALIFORNIA 91436
Phone: (818)386-2244

ATTN: DIANE WELCH


RE:  Borrower(s):  CHRISTOPHER MCKALPAIN


Property Address: 6938 LAUREL CANYON BOULEVARD, #302
LOS ANGELES, CALIFORNIA 91605

| | |
|---|---|
| Document Date: | FEBRUARY 1, 2007 |
| Closing Date: | |
| Disbursement Date: | |
| Case No.: | |
| Loan No.: | 265485 |
| App. No.: | |
| Order No.: | 601001235X07 |
| Escrow No.: | 526572DW |

( CONTINUED )

## ADDENDUM  TO  CLOSING  INSTRUCTIONS
(Additional conditions to be satisfied prior to disbursement of loan proceeds)

.
.
.
.
********CALIFORNIA CLOSING AGENTS********
YOU SHALL NOT FUND OR CAUSE THIS LOAN TO FUND UNLESS
YOU CAN DISBURSE THE FUNDS NO LATER THAN ONE DAY
FROM THE LENDER'S FUNDING DATE
OR YOU HAVE COMPLETED THE PER DIEM DISCLOSURE
PROPERLY AND THE DISCLOSURE WAS
EXECUTED BY THE BORROWER(S).  IN ANY EVENT,
THE DAILY INTEREST CAN NOT BE MORE THAN
ONE DAY FROM ESCROW DISBURSEMENT UNLESS
THE PER DIEM DISCLOSURE WAS COMPLETED CORRECTLY.
YOU MUST NOTIFY LENDER IMMEDIATELY IN THE EVENT THAT
YOU ADJUSTED THE DAILY INTEREST TO MORE THAN
ONE DAY FROM THE FUNDING DATE ON THE FINAL HUD1.

ACKNOWLEDGED AND AGREED:

_____        _____
Settlement  Agent                              Date
DIANE WELCH

MIN: 1004872-0000008486-9                              Loan Number: 265485

# InterestOnly ADJUSTABLE RATE NOTE
### (Six-Month LIBOR Index (As Published in *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

FEBRUARY 1, 2007              LAKE FOREST            CALIFORNIA
    [Date]                        [City]                    [State]

  6938 LAUREL CANYON BOULEVARD, #302, LOS ANGELES, CALIFORNIA 91605
                      [Property Address]

### 1.  BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 320,000.00      (this amount is called "Principal"), plus interest, to the order of Lender. Lender is DB HOME LENDING LLC, A CALIFORNIA LIMITED LIABILITY COMPANY                                          .
I will make all payments under this Note in the form of cash, check or money order.
    I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   7.200  %. The interest rate I will pay may change in accordance with Section 4 of this Note.
    The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3.  PAYMENTS
**(A) Time and Place of Payments**
    I will make a payment on the        1st      day of every month, beginning on APRIL 1, 2007       .
Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.
    I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on MARCH 1, 2037         , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
    I will make my monthly payments at 26521 RANCHO PARKWAY SOUTH - STE 210, LAKE FOREST, CALIFORNIA 92630
or at a different place if required by the Note Holder.
**(B) Amount of My Initial Monthly Payments**
    My initial monthly payment will be in the amount of U.S. $ 1,920.00         before the First Principal and Interest Payment Due Date, thereafter it will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.
**(C) Monthly Payment Changes**
    Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4.  ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
**(A) Change Dates**
    The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of MARCH,   1     , 2009 , and the adjustable interest rate I will pay may change on that day every sixth month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

CONV
● SC-ARM InterestOnly Note
FL-4278 (0602)                              Page 1 of 3                              Initials: _____

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding FIVE AND 850/1000 percentage points ( 5.850 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.200 % or less than 7.200 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000 percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 13.200 % or less than 7.200 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after MARCH 1, 2012 .

## 5.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all the unpaid principal is known as a "Full prepayment." A prepayment of only part of the unpaid principal is known as a "Partial Prepayment."

If I make a Partial Prepayment equal to one or more of my monthly payments, my due date may be advanced no more than one month. If I make any other Partial Prepayment, I must still make each later payment as it becomes due and in the same amount. I may make a Full or a Partial Prepayment at any time.

☐ If this box is checked, no prepayment penalty will be charged on this loan.

☒ If this box is checked, I have selected a loan which has a prepayment penalty. The Prepayment Penalty Addendum attached hereto and made a part hereof defines the terms of the prepayment penalty. I understand that by agreeing to pay a prepayment penalty I acknowledge that my interest rate and/or fees are lower than they would be without a prepayment penalty.

## 6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.   BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.  SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
CHRISTOPHER MCKALPAIN                    -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

*[Sign Original Only]*

# PREPAYMENT ADDENDUM TO NOTE

Loan Number: 265485

Date: FEBRUARY 1, 2007

Borrower(s): CHRISTOPHER MCKALPAIN

THIS PREPAYMENT ADDENDUM TO NOTE (the "Addendum") is made this   1st   day of FEBRUARY, 2007   , and is incorporated into and shall be deemed to amend and supplement that certain promissory note (the "Note") made by the undersigned ("Borrower") in favor of DB HOME LENDING LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

("Lender") and dated the same date as this Addendum. Repayment of the Note is secured by a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") given by Borrower in favor of Lender and dated the same date as this Addendum. To the extent that the provisions of this Addendum are inconsistent with the provisions of the Note, the provisions of this Addendum shall supersede the inconsistent provisions of the Note.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

Section  5  of the Note is amended to read in its entirety as follows:

### 5. BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If the Note contains provisions for a variable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

If within TWENTY-FOUR ( 24 ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds TWENTY         percent ( 20.000 %) of the original principal amount of the loan, I will pay a Prepayment charge in an amount equal to SIX       ( 6 ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds TWENTY        percent ( 20.000 %) of the original principal amount of the loan.

CALIFORNIA PREPAYMENT ADDENDUM TO NOTE
(CIVIL CODE PROVISION)
12/13/05                 Page 1 of 2         DocMagic *eForms* 800-649-1362
www.docmagic.com

If the Note contains provisions for a variable interest rate, the purpose of the loan is to finance the purchase or construction of real property containing four or fewer residential units or on which four or fewer residential units are to be constructed, and the Note Holder is not a "supervised financial organization," as defined in California Civil Code Section 1916.5, then I may prepay the loan in whole or in part without a Prepayment charge within 90 days of notification of any increase in the rate of interest.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum.

_____   Date        _____   Date
Borrower CHRISTOPHER                           Borrower
MCKALPAIN


_____   Date        _____   Date
Borrower                                       Borrower


_____   Date        _____   Date
Borrower                                       Borrower

# ALLONGE TO NOTE

LOAN NUMBER: 265485

LOAN AMOUNT: $320,000.00

PROPERTY ADDRESS: 6938 LAUREL CANYON BOULEVARD, #302, LOS ANGELES, CALIFORNIA 91605

ALLONGE TO NOTE DATED FEBRUARY 1, 2007

IN FAVOR OF DB HOME LENDING LLC

AND EXECUTED BY CHRISTOPHER MCKALPAIN

PAY TO THE ORDER OF OCWEN LOAN SERVICING, LLC, P.O. BOX 6723, SPRINGFIELD, OH 45501-6723

WITHOUT RECOURSE DB HOME LENDING LLC

BY _____

TITLE:

ALLONGE TO NOTE
08/08/04

DocMagic ℮Ｆｏｒｍｓ   800-649-1362
www.docmagic.com

Recording Requested By:
DB HOME LENDING LLC

And After Recording Return To:
DB HOME LENDING LLC  ATTN: SHIPPING DEPT
26521 RANCHO PARKWAY SOUTH - STE 210
LAKE FOREST, CALIFORNIA 92630
Loan Number: 265485

——————————— [Space Above This Line For Recording Data] ———————————

# DEED OF TRUST

**MIN:** 1004872-0000008486-9

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "Security Instrument" means this document, which is dated   FEBRUARY 1, 2007   , together with all Riders to this document.

**(B)** "Borrower" is   CHRISTOPHER MCKALPAIN, A SINGLE MAN

Borrower is the trustor under this Security Instrument.

**(C)** "Lender" is  DB HOME LENDING LLC

Lender is a  LIMITED LIABILITY COMPANY                                    organized
and existing under the laws of   CALIFORNIA
Lender's address is   26521 RANCHO PARKWAY SOUTH - STE 210, LAKE FOREST,
CALIFORNIA 92630

**(D)** "Trustee" is   CHICAGO TITLE COMPANY
700 SOUTH FLOWER STREET, SUITE 800, LOS ANGELES, CALIFORNIA 90017

**(E)** "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F)** "Note" means the promissory note signed by Borrower and dated FEBRUARY 1, 2007   .
The Note states that Borrower owes Lender   THREE HUNDRED TWENTY THOUSAND AND
00/100                                Dollars (U.S. $ 320,000.00       ) plus interest.

Borrower Initials: _____   _____   _____   _____   _____   _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS     DocMagic *EFormats* 800-649-1362
Form 3005 01/01 (02/01/07)                     Page 1 of 14                                      www.docmagic.com

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than MARCH 1, 2037

(G)   "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)   "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)   "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | |
|---|---|
| ☒ Adjustable Rate Rider | ☐ Planned Unit Development Rider |
| ☐ Balloon Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☐ Second Home Rider |
| ☒ Condominium Rider | ☒ Other(s) [specify] |
| |      PREPAYMENT RIDER |

(J)   "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)   "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)   "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)   "**Escrow Items**" means those items that are described in Section 3.

(N)   "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)   "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)   "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)   "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)   "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's

Borrower Initials: _____   _____   _____   _____   _____

covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY of LOS ANGELES :
[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 2321-011-022; 2321-011-023; 2321-011-024; 2321-011-025; 2321-011-040

which currently has the address of 6938 LAUREL CANYON BOULEVARD, #302
[Street]

LOS ANGELES , California 91605 ("Property Address"):
[City] [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

Borrower Initials: _____ _____ _____ _____ _____ _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic *Forms* 800-649-1362
Form 3005 01/01 (02/01/07)                Page 3 of 14                                      www.docmagic.com

obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender

Borrower Initials: _____  _____  _____  _____  _____  _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01 (02/01/07)                    Page 4 of 14          DocMagic *eRoms* 800-649-1362
                                                                     www.docmagic.com

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.  Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.  Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Borrower Initials: _____  _____  _____  _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01 (02/01/07)                     Page 5 of 14

DocMagic *eFormS* 800-649-1362
www.docmagic.com

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

Borrower Initials: _____   _____   _____   _____   _____   _____

   **8.  Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

   **9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

   Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

   If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

   **10.  Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance.  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

   Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance.

Borrower  Initials:  _____   _____   _____   _____   _____

Mortgage Insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses.  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements.  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses.  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."  Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law.  These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction:  (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value.  Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether

Borrower Initials: _____  _____  _____  _____  _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01 (02/01/07)                    Page 8 of 14                    DocMagic eForms 800-649-1362
www.docmagic.com

or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires

Borrower Initials: _____    _____    _____    _____

otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

Borrower Initials: _____   _____   _____   _____   _____

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action

Borrower Initials: _____   _____   _____   _____   _____

required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Borrower Initials: _____  _____   _____  _____   _____  _____   _____

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
CHRISTOPHER MCKALPAIN          -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

Witness:                         Witness:

_____   _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01 (02/01/07)                Page 13 of 14
DocMagic  800-649-1362
www.docmagic.com

——————————— [Space Below This Line For Acknowledgment] ———————————

State of California       )
                         ) ss.
County of _LOS ANGELES_____ )

On _____ before me,_____

personally appeared _ CHRISTOPHER MCKALPAIN _____

_____

_____ ,

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.


                                        _____
                                        NOTARY SIGNATURE

                                         _____
                                         (Typed Name of Notary)

            NOTARY SEAL

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01 (02/01/07)               Page 14 of 14           DocMagic EForms 800-649-1362
                                                               www.docmagic.com

Loan Number: 265485

Date: FEBRUARY 1, 2007

Property Address: 6938 LAUREL CANYON BOULEVARD, #302, LOS ANGELES, CALIFORNIA 91605

**EXHIBIT "A"**

**LEGAL DESCRIPTION**

A.P.N. # : 2321-011-022; 2321-011-023; 2321-011-024;

DocMagic *eForms* 800-649-1362
www.docmagic.com

After Recording Return To: DB HOME LENDING LLC   ATTN: SHIPPING DEPT
26521 RANCHO PARKWAY SOUTH - STE 210
LAKE FOREST, CALIFORNIA 92630
Loan Number: 265485
MIN: 1004872-0000008486-9


Prepared By: DB HOME LENDING LLC

——————————————— [Space Above This Line For Recording Data] ———————————————

DOC ID #:

## InterestOnly ADJUSTABLE RATE RIDER

### (Six-Month LIBOR Index (As Published in The Wall Street Journal) - Rate Caps)

THIS InterestOnly ADJUSTABLE RATE RIDER is made this 1st
day of FEBRUARY 2007 , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of
the same date given by the undersigned (the "Borrower") to secure Borrower's Note to
DB HOME LENDING LLC, A CALIFORNIA LIMITED LIABILITY COMPANY
(the "Lender") of the same date and covering the property described in the Security Instrument
and located at:

6938 LAUREL CANYON BOULEVARD, #302, LOS ANGELES, CALIFORNIA 91605
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY
INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE
AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE I MUST PAY.**


**CONV**
● **BC-ARM Rider**
FE-4279 (0603)                     **Page 1 of 4**                          Initials:_____

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    The Note provides for an initial interest rate of    7.200 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.  ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    **(A) Change Dates**
    The interest rate I will pay will change on the         1st         day of  MARCH
2009                  , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

    **(B) The Index**
    Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
    If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. Tha Note Holder will give me notice of this choice.

    **(C) Calculation of Changes**
    Before each Change Date, the Note Holder will calculate my new interest rate by adding
FIVE AND 850/1000        percentage points (  5.850 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

CONV
● BC-ARM Rider
FE-4279 (0603)                 Page 2 of 4                          Initials: _____

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.200 % or less than 7.200 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000 percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 13.200 % or less than 7.200 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after MARCH 01, 2012 .

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within

CONV
• BC-ARM Rider
FE-4279 (0603)                    Page 3 of 4                    Initials: _____

which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

_____ (Seal)
CHRISTOPHER MCKALPAIN                  - Borrower

_____ (Seal)
                                       - Borrower

_____ (Seal)
                                       - Borrower

_____ (Seal)
                                       - Borrower

CONV
● BC-ARM Rider
FE-4279 (0603)                Page 4 of 4

# PREPAYMENT RIDER

Loan Number: 265485

Date: FEBRUARY 1, 2007

Borrower(s): CHRISTOPHER MCKALPAIN

THIS PREPAYMENT RIDER (the "Rider") is made this 1st     day of FEBRUARY   .
2007                      , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of
DB HOME LENDING LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

("Lender").  The Security Instrument encumbers the Property more specifically described in the Security
Instrument and located at

6938 LAUREL CANYON BOULEVARD, #302, LOS ANGELES, CALIFORNIA 91605
[Property Address]

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A.   PREPAYMENT CHARGE
The Note provides for the payment of a prepayment charge as follows:

### 5 .  BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE
I have the right to make payments of Principal at any time before they are due.
A payment of Principal only is known as a "Prepayment."  When I make a Prepayment,
I will tell the Note Holder in writing that I am doing so.  I may not designate a payment
as a Prepayment if I have not made all the monthly payments due under the Note.
The Note Holder will use my Prepayments to reduce the amount of Principal that
I owe under the Note.  However, the Note Holder may apply my Prepayment to the
accrued and unpaid interest on the Prepayment amount, before applying my Prepayment
to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be
no changes in the due dates of my monthly payment unless the Note Holder agrees in
writing to those changes.
If the Note contains provisions for a variable interest rate, my partial Prepayment
may reduce the amount of my monthly payments after the first Change Date following my
partial Prepayment.  However, any reduction due to my partial Prepayment may be offset
by an interest rate increase.

---

CALIFORNIA PREPAYMENT RIDER
(CIVIL CODE PROVISION)
12/13/05                                    Page 1 of 2

DocMagic *eFarms* 800-849-1362
www.docmagic.com

If within TWENTY-FOUR ( 24    ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds TWENTY percent (    20.000 %) of the original principal amount of the loan, I will pay a Prepayment charge in an amount equal to    SIX    (    6    ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds TWENTY           percent (  20.000 %) of the original principal amount of the loan.

If the Note contains provisions for a variable interest rate, the purpose of the loan is to finance the purchase or construction of real property containing four or fewer residential units or on which four or fewer residential units are to be constructed, and the Note Holder is not a "supervised financial organization," as defined in California Civil Code Section 1916.5, then I may prepay the loan in whole or in part without a Prepayment charge within 90 days of notification of any increase in the rate of interest.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.


_____ (Seal)          _____ (Seal)
CHRISTOPHER MCKALPAIN -Borrower                                          -Borrower


_____ (Seal)          _____ (Seal)
                        -Borrower                                          -Borrower


_____ (Seal)          _____ (Seal)
                        -Borrower                                          -Borrower


CALIFORNIA PREPAYMENT RIDER                           DocMagic eFarmas 800-649-1362
(CIVIL CODE PROVISION)                                          www.docmagic.com
12/13/05                          Page 2 of 2

Loan Number: 265485

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 1st day of FEBRUARY, 2007 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to DB HOME LENDING LLC, A CALIFORNIA LIMITED
LIABILITY COMPANY
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

6938 LAUREL CANYON BOULEVARD, #302, LOS ANGELES, CALIFORNIA 91605
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a
condominium project known as:

LAUREL BLISS
[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium
Project (the "Owners Association") holds title to property for the benefit or use of its members or
shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds
and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the
Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or
any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv)
other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed
pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender
and which provides insurance coverage in the amounts (including deductible levels), for the periods, and
against loss by fire, hazards included within the term "extended coverage," and any other hazards, including,
but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives
the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for
property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property
insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided
by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower Initials: _____  _____  _____  _____  _____  _____

*DocMagic* ℰℱ℩ℴ℩ℴℴℴ 800-649-1362
*www.docmagic.com*

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Borrower Initials: _____   _____   _____   _____   _____   _____

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____ (Seal)　　　　　_____ (Seal)
CHRISTOPHER MCKALPAIN -Borrower　　　　　　　　　　　　　　　-Borrower


_____ (Seal)　　　　　_____ (Seal)
　　　　　　　　　　　　-Borrower　　　　　　　　　　　　　　　-Borrower


_____ (Seal)　　　　　_____ (Seal)
　　　　　　　　　　　　-Borrower　　　　　　　　　　　　　　　-Borrower

## FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Loan Number: 265485                                      Date: FEBRUARY 1, 2007
Creditor: DB HOME LENDING LLC
Address: 26521 RANCHO PARKWAY SOUTH - STE 210, LAKE FOREST, CALIFORNIA 92630

Borrower(s): CHRISTOPHER MCKALPAIN

Address: 6938 LAUREL CANYON BOULEVARD, #302, LOS ANGELES, CALIFORNIA 91605

Lines containing an "x" are applicable:

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | ☐ Total Sale Price The total cost of your purchase on credit including your down payment of $ |
|---|---|---|---|---|
| 10.749 % | $801,981.65 | $308,643.80 | $1,110,625.45 | $ |

PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payment ** | When Payments Are Due | Number of Payments | Amount of Payment ** | When Payments Are Due | Number of Payments | Amount of Payment ** | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning | | | Monthly Beginning | | | Monthly Beginning |
| 24 | 1,920.00 | 04/01/07 | | | | | | |
| 6 | 2,720.00 | 04/01/09 | | | | | | |
| 6 | 2,986.67 | 10/01/09 | | | | | | |
| 24 | 3,000.00 | 04/01/10 | | | | | | |
| 299 | 3,194.37 | 04/01/12 | | | | | | |
| 1 | 3,188.80 | 03/01/37 | | | | | | |

_____ DEMAND FEATURE: This obligation has a demand feature.

  X  VARIABLE RATE FEATURE: Your loan contains a variable rate feature.  Disclosures about the variable rate feature have been provided to you earlier.

INSURANCE: The following insurance is required to obtain credit:
  _____ Credit life insurance and credit disability   X  Property insurance _____ Flood insurance _____ Mortgage insurance
  You may obtain property insurance from any insurer that is acceptable to the Lender.
SECURITY: You are giving a security interest in: 6938 LAUREL CANYON BOULEVARD, #302, LOS ANGELES,
       X  The goods or property being purchased _____ Real property you already own.  CALIFORNIA 91605
FILING FEES: $ 100.00
LATE CHARGE: If payment is more than _____ 15 _____ days late, you will be charged _____ 5.000 % of the payment.
PREPAYMENT: If you pay off early, you
  X  may     _____ will not  have to pay a penalty.
  _____ may     X  will not  be entitled to a refund of part of the finance charge.
ASSUMPTION: Someone buying your property
  _____ may     _____ may, subject to conditions    X  may not  assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
  X  "e" means an estimate   _____ all dates and numerical disclosures except the late payment disclosures are estimates.
     Each of the undersigned acknowledge receipt of a complete copy of this disclosure. The disclosure does not constitute a contract or a commitment to lend.

| Applicant CHRISTOPHER MCKALPAIN | Date | Applicant | Date |
|---|---|---|---|
| Applicant | Date | Applicant | Date |
| Applicant | Date | Applicant | Date |

** NOTE: Payments shown above do not include reserve deposits for taxes, assessments, and property or flood insurance.

Lender:  DB HOME LENDING LLC
         26521 RANCHO PARKWAY SOUTH - STE 210
         LAKE FOREST, CALIFORNIA 92630

Re:  CHRISTOPHER MCKALPAIN
     6938 LAUREL CANYON BOULEVARD, #302
     LOS ANGELES, CALIFORNIA 91605

Date: FEBRUARY 1, 2007
Loan Number: 265485

| Ref HUD-I Statement | ITEMIZATION OF AMOUNT FINANCED | |
|---|---|---|
| | ■ Amount given to you directly | $ |
| 1001 1004 | ■ Amount paid on your account<br>Insurance Reserves<br>Tax Reserves<br>Other Reserves | |
| 1009 | Aggregate Adjustment | |
| | ■ Amount paid to others on your behalf: | |
| 803 | Appraisal Fee  to: NEW WORLD MORTGAGE INC | 375.00 |
| 804 | Credit Reporting Fee | |
| 903 | Hazard Insurance Premium | |
| 809 | Document Preparation Fee | |
| 1106 | Notary Fee | |
| 1108 | Title Ins. Premium  to: Other | 550.00 |
| 1201 | Recording Fee  to: Other | 100.00 |
| | ENDORSEMENT FEE to: Other | 300.00 |
| | INS ENDORSEMENTS to: Other | 25.00 |
| | Loan Proceeds to:CHICAGO TITLE COMPANY | $307,293.80 |
| | ■ AMOUNT FINANCED | $    308,643.80 |
| | ■ Prepaid Finance Charge | $     11,356.20 |

| | ■ Itemization of Prepaid Finance Charge: | | ■ Loan Amount  $    320,000.00 |
|---|---|---|---|
| 801 | Loan Origination Fee to: NEW WORLD MORTGAGE  $ | 5,600.00 | |
| 802 | Loan Discount Fee | | |
| 806 | Tax Service Fee  to: DB HOME LENDING LLC | 85.00 | |
| | Prepaid Interest ( 30      days) | | |
| 901 | @      7.200  % per annum | 1,893.70 | |
| 902 | Mtge. Ins. Premium | | This form does not cover all items |
| 1002 | Mtge. Ins. Reserves | | you will be required to pay in cash |
| 808 | Origination Fee | | at settlement, for example, deposits |
| | ADMINISTRATION FEE to: DB HOME LENDING LLC | 1,060.00 | in escrow for real estate taxes and |
| | FLOOD ZONE DETERMINATION to: DB HOME LENDING | 17.00 | insurance may be different.  You |
| | PROCESSING FEE to: NEW WORLD MORTGAGE INC | 995.00 | may wish to inquire as to the |
| | ESCROW FEE to: MARA ESCROW COMPANY | 1,050.00 | amounts of such other items.  You |
| | TIE IN FEE to: Other | 250.00 | may be required to pay other |
| | SIGNER FEE to: Other | 100.00 | additional amounts to be settled. |
| | COURIER FEE to: Other | 68.00 | |
| | SUB-ESCROW FEE to: Other | 62.50 | ☐  All disclosures are estimates |
| | E-MAIL FEE to: Other | 150.00 | |
| | AUDIT FEE to: Other | 25.00 | |
| | Total Prepaid Finance Charge      $ | 11,356.20 | |

The undersigned acknowledge receiving and reading a completed copy of this disclosure.

| (Borrower)  CHRISTOPHER MCKALPAIN | (Date) | (Borrower) | (Date) |
|---|---|---|---|
| (Borrower) | (Date) | (Borrower) | (Date) |
| (Borrower) | (Date) | (Borrower) | (Date) |

GOOD FAITH ESTIMATE OF SETTLEMENT CHARGES

DocMagic ⓔＦＯＲＭＳ 800-649-1362
www.docmagic.com